# EXHIBIT A

<u>Execution Copy</u>

**<u>CONFIDENTIAL</u>**

---

# EQUITY PURCHASE AND MERGER AGREEMENT

## AMONG

## REFCO GROUP LTD., LLC,

## REFCO GROUP HOLDINGS, INC.,

## THL REFCO ACQUISITION PARTNERS

## AND

## REFCO MERGER LLC

**DATED AS OF JUNE 8, 2004**

---

DA1:\367401\22\7VHL22!.DOC\77356.0036

MB02055006

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE 1 | MEMBERSHIP INTERESTS PURCHASE; MERGER | 2 |
| Section 1.1 | Purchase and Sale of the Membership Interests | 2 |
| Section 1.2 | The Merger | 3 |
| Section 1.3 | Effective Time | 3 |
| Section 1.4 | Effects of the Merger | 3 |
| Section 1.5 | Limited Liability Company Agreement | 3 |
| Section 1.6 | Closing | 3 |
| ARTICLE 2 | CONVERSION OF MEMBERSHIP INTERESTS; PAYMENT OF CONSIDERATION; CONTRIBUTION OF EQUITY INTERESTS | 4 |
| Section 2.1 | Conversion of Membership Interests | 4 |
| Section 2.2 | Debt and Excess Expense Amount; Payment of Cash at Closing | 5 |
| Section 2.3 | Escrow | 5 |
| Section 2.4 | Post Closing Earn-Out Amounts | 5 |
| Section 2.5 | Contribution of Equity Interests | 6 |
| ARTICLE 3 | REPRESENTATIONS AND WARRANTIES OF RGHI | 6 |
| Section 3.1 | Organization of the Company | 6 |
| Section 3.2 | Authorization | 6 |
| Section 3.3 | Capitalization of the Company | 7 |
| Section 3.4 | No Conflict or Violation | 7 |
| Section 3.5 | Governmental and Third Party Consents | 8 |
| Section 3.6 | Compliance with Law; Permits | 8 |
| Section 3.7 | No Defaults | 9 |
| Section 3.8 | Subsidiaries | 9 |
| Section 3.9 | Financial Statements | 9 |
| Section 3.10 | Absence of Undisclosed Liabilities | 10 |
| Section 3.11 | Absence of Certain Changes | 10 |
| Section 3.12 | Interests of Officers and Directors | 10 |
| Section 3.13 | Litigation | 11 |
| Section 3.14 | Taxes | 11 |
| Section 3.15 | Material Contracts | 12 |

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

TABLE OF CONTENTS

(Cont'd)

| | | Page |
|---|---|---|
| Section 3.16 | Employee Plans | 14 |
| Section 3.17 | Environmental, Health, and Safety Matters | 16 |
| Section 3.18 | Intellectual Property | 17 |
| Section 3.19 | Labor Matters | 18 |
| Section 3.20 | Real and Personal Property | 18 |
| Section 3.21 | Insurance | 19 |
| Section 3.22 | Working Capital | 19 |
| Section 3.23 | Assets of Asset Manager Entities | 19 |
| Section 3.24 | Liabilities Relating to Asset Manager Entities | 19 |
| Section 3.25 | Brokers | 19 |
| Section 3.26 | Brokerage Accounts | 20 |
| Section 3.27 | Exclusivity of Representations and Warranties | 20 |
| ARTICLE 4 | REPRESENTATIONS AND WARRANTIES OF THE BUYER AND MERGER COMPANY | 20 |
| Section 4.1 | Organization | 20 |
| Section 4.2 | Authority | 21 |
| Section 4.3 | No Conflict or Violation | 21 |
| Section 4.4 | Governmental and Third Party Consents | 22 |
| Section 4.5 | Brokers | 22 |
| Section 4.6 | Financing | 22 |
| ARTICLE 5 | COVENANTS | 23 |
| Section 5.1 | Conduct of Business of the Company | 23 |
| Section 5.2 | Tax Matters | 25 |
| Section 5.3 | Access to Information | 25 |
| Section 5.4 | Efforts to Consummate | 26 |
| Section 5.5 | Public Announcements | 27 |
| Section 5.6 | Exclusive Dealing | 27 |
| Section 5.7 | Employee Benefits | 27 |
| Section 5.8 | No Disposition or Encumbrance of Membership Interests | 28 |

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

## TABLE OF CONTENTS
### (Cont'd)

| | | Page |
|---|---|---|
| Section 5.9 | Segregation of Funds | 28 |
| Section 5.10 | 2002 Financials | 28 |
| Section 5.11 | Financial Information | 29 |
| Section 5.12 | Management Bonus Pool Plan | 29 |
| Section 5.13 | BAWAG Interest Transfer Transactions | 29 |
| Section 5.14 | Certain Distributions | 30 |
| ARTICLE 6 | CONDITIONS TO CLOSING | 30 |
| Section 6.1 | Conditions to the Obligations of the Parties | 30 |
| Section 6.2 | Other Conditions to the Obligations of the Buyer | 30 |
| Section 6.3 | Other Conditions to the Obligations of RGHI | 32 |
| ARTICLE 7 | TERMINATION; AMENDMENT; WAIVER | 33 |
| Section 7.1 | Termination | 33 |
| Section 7.2 | Effect of Termination | 34 |
| Section 7.3 | Fees and Expenses | 35 |
| Section 7.4 | Amendment | 35 |
| Section 7.5 | Extension; Waiver | 35 |
| ARTICLE 8 | SURVIVAL OF REPRESENTATIONS; INDEMNIFICATION | 35 |
| Section 8.1 | Survival of Representations | 35 |
| Section 8.2 | General Indemnification | 36 |
| Section 8.3 | Third Party Claims | 37 |
| Section 8.4 | Limitations on Indemnification Obligations | 38 |
| Section 8.5 | Knowledge | 38 |
| Section 8.6 | Exclusive Remedy | 39 |
| Section 8.7 | Proration | 39 |
| ARTICLE 9 | MISCELLANEOUS | 39 |
| Section 9.1 | Entire Agreement; Assignment | 39 |
| Section 9.2 | Notices | 40 |
| Section 9.3 | Governing Law | 42 |
| Section 9.4 | Construction; Interpretation | 42 |

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

TABLE OF CONTENTS
(Cont'd)

|  |  | Page |
|---|---|---|
| Section 9.5 | Parties in Interest | 42 |
| Section 9.6 | Severability | 42 |
| Section 9.7 | Counterparts | 42 |
| Section 9.8 | Knowledge of the Company | 42 |
| Section 9.9 | Waiver of Jury Trial | 42 |
| Section 9.10 | Schedules | 43 |
| Section 9.11 | Definitions | 44 |
| Section 9.12 | Obligations for Indemnification | 48 |

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

SCHEDULES:

| | | |
|---|---|---|
| 2.4 | - | Post Closing Earn-Out Escrow Amount |
| 3.3 | - | Capitalization |
| 3.4 | - | Impairment of Contracts |
| 3.5 | - | Governmental and Third Party Consents |
| 3.6 | - | Permits |
| 3.8 | - | Investments |
| 3.10 | - | Liabilities |
| 3.11 | - | Absence of Certain Changes |
| 3.12 | - | Interests of Officers and Directors |
| 3.13 | - | Litigation |
| 3.14 | - | Taxes |
| 3.15 | - | Material Contracts |
| 3.16 | - | Employee Plans |
| 3.18 | - | Intellectual Property |
| 3.19 | - | Labor Matters |
| 3.20(b) | - | Leased Real Property |
| 3.20(c) | - | Personal Property Liens |
| 3.25 | - | Brokers |
| 4.4(a) | - | Governmental and Third Party Consents of the Buyer |
| 4.4(b) | - | Governmental and Third Party Consents of Merger Company |
| 4.5 | - | Brokers |
| 4.6 | - | Financing |
| 5.1(c) | | Asset Manager Entities |
| 5.1(g) | - | Capital Structure of the Company or Any Subsidiary |
| 6.2(f) | - | Financing/Term Sheets |

EXHIBITS:

| | | |
|---|---|---|
| A | - | Members of the Company |
| B | - | List of Subsidiaries |
| C | - | Form of Amended and Restated Limited Liability Company Agreement |
| D | - | Form of Escrow Agreement |
| E | - | Form of Management Bonus Pool Plan |
| F | - | Form of Securityholders Agreement |
| G | - | Form of Management Agreement |
| H | - | Form of Letter Agreement |

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

## DEFINITIONS

The following terms which appear in this Agreement are defined in the following Sections:

| Term | Section or Other Location |
|---|---|
| Affiliate | Section 9.11 |
| Agreement | Preamble |
| Aggregate Consideration Amount | Section 1.1(a) |
| Amended and Restated Limited Liability Company Agreement | Section 1.5 |
| Antitrust Laws | Section 9.11 |
| Asset Manager Entities | Section 5.1(c) |
| Balance Sheets | Section 3.10 |
| BAWAG | Preamble |
| BAWAG Interest Transfer Transactions | Section 5.13 |
| BAWAG Merger | Section 5.13 |
| BAWAG Transferred Interests | Section 2.1(a)(i) |
| BOI | Recitals |
| Business Day | Section 9.11 |
| Buyer Indemnitee | Section 8.2(a) |
| Buyer | Preamble |
| Certificate of Merger | Section 1.3 |
| CFTC | Section 9.11 |
| Class A Common Unit | Section 2.1(a)(i) |
| Closing | Section 1.6(a) |
| Closing Date | Section 1.6(a) |
| CME | Section 9.11 |
| COBRA | Section 3.16(h) |
| Code | Section 9.11 |
| Company | Preamble |
| Company Employees | Section 5.7 |
| Company Indebtedness | Section 9.11 |
| Company Intellectual Property and Technology | Section 3.18(a) |
| Company Plans | Section 3.16(a) |
| Company Transaction Expenses | Section 9.11 |
| Customer Financing Indebtedness | Section 9.11 |
| Debt and Excess Expense Amount | Section 1.1(a) |
| DLLCA | Section 1.2 |
| Effective Time | Section 1.3 |
| Enforceability Limitations | Section 3.2 |
| Environmental, Health, and Safety Requirements | Section 3.17(c) |
| ERISA | Section 9.11 |
| ERISA Affiliate | Section 3.16(a) |

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

| Term | Section or Other Location |
|---|---|
| Escrow Agent | Section 2.3 |
| Escrow Agreement | Section 2.3 |
| Excluded Employees | Section 5.7(b) |
| Finance Company | Section 9.11 |
| Financial Statements | Section 3.9 |
| GAAP | Section 3.9(a) |
| Governmental Authority | Section 9.11 |
| Governmental Order | Section 9.11 |
| HSR Act | Section 9.11 |
| Indemnified Party | Section 8.3(a) |
| Intellectual Property | Section 9.11 |
| IRS | Section 9.11 |
| Law | Section 9.11 |
| Leased Real Property | Section 3.20(b) |
| Legal Proceeding | Section 9.11 |
| Letter Agreement | Section 6.2(n) |
| Lien | Section 9.11 |
| Limited Liability Company Agreement | Recitals |
| Loss | Section 8.2(a) |
| Management Agreement | Section 6.2(n) |
| Material Adverse Effect | Section 9.11 |
| Material Contracts | Section 3.15 |
| Material Leases | Section 3.20(b) |
| Membership Interests | Recitals |
| Memphis Holdings Purchase Agreement | Section 1.1(a) |
| Merger | Recitals |
| Merger Company | Preamble |
| Non-U.S. Employees | Section 3.16(n) |
| Non-Voting Membership Interests | Recitals |
| Organizational Documents | Section 9.11 |
| Parties | Preamble |
| Per Share Amount | Section 1.1(a) |
| Permits | Section 9.11 |
| Permitted Exceptions | Section 9.11 |
| Person | Section 9.11 |
| Post Closing Earn-Out Amounts | Section 9.11 |
| Post Closing Earn-Out Escrow Amount | Section 2.3 |
| Pre-Closing Tax Returns | Section 5.2(a) |
| Purchased Membership Interests | Section 1.1(b) |
| Responsible Party | Section 8.3(a) |
| RGHI | Preamble |
| RGHI Equity Portion | Section 9.11 |
| SEC | Section 9.11 |
| Securities Act | Section 3.3 |

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

| Term | Section or Other Location |
|---|---|
| Securityholders Agreement | Section 6.2(i) |
| Self-Regulatory Organization | Section 9.11 |
| Seller Indemnitee | Section 8.2(b) |
| Separate Account | Section 5.9 |
| Subsidiary | Section 9.11 |
| Surviving Company | Section 1.2 |
| Taxes | Section 9.11 |
| Tax Return | Section 9.11 |
| Technology | Section 9.11 |
| Termination Date | Section 7.1(b) |
| Third Party Claim | Section 8.3(a) |
| THL | Section 6.2(n) |
| Threshold | Section 8.4(a)(ii) |
| Updated Schedules | Section 9.10(a) |
| Voting Membership Interests | Recitals |

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

# EQUITY PURCHASE AND MERGER AGREEMENT

THIS EQUITY PURCHASE AND MERGER AGREEMENT (this "Agreement"), dated as of June 8, 2004, is made by and among Refco Group Ltd., LLC, a Delaware limited liability company (the "Company"), Refco Group Holdings, Inc., a Delaware corporation ("RGHI"), THL Refco Acquisition Partners, a Delaware general partnership (the "Buyer") and Refco Merger LLC, a Delaware limited liability company ("Merger Company"). In addition, (i) Alinea Holding GmbH ("BAWAG") is a party to the Agreement solely for purposes of Section 5.13, and (ii) Phillip R. Bennett and Tone Grant are parties to this Agreement solely for purposes of Section 9.12. The Company, RGHI, the Buyer and Merger Company shall be referred to herein from time to time collectively as the "Parties" and individually as a "Party."

WHEREAS, in accordance with the limited liability company agreement of the Company as currently in effect (the "Limited Liability Company Agreement"), there are issued and outstanding 947 Voting Membership Shares of the Company (the "Voting Membership Interests") and 53 Non-Voting Membership Shares of the Company (the "Non-Voting Membership Interests," and, together with the Voting Membership Interests, the "Membership Interests");

WHEREAS, as of the date hereof, RGHI and BAWAG Overseas, Inc. ("BOI") are the owners of all of the Membership Interests in the respective amounts as set forth in Exhibit A attached hereto;

WHEREAS, as of the date of this Agreement, BAWAG is the sole owner of all equity interests of BOI;

WHEREAS, the Company owns, directly or indirectly, all or a majority of the equity interests in the entities listed in Exhibit B attached hereto;

WHEREAS, the Buyer desires to purchase, subject to the terms and conditions hereof, certain Membership Interests from RGHI;

WHEREAS, subject to the terms and conditions hereof, Merger Company will merge with and into the Company, with the Company being the surviving entity of the merger (the "Merger");

NOW, THEREFORE, in consideration of the premises and the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

## ARTICLE 1
## MEMBERSHIP INTERESTS PURCHASE; MERGER

Section 1.1   **Purchase and Sale of the Membership Interests**.

(a)   Upon the terms and subject to the conditions set forth in this Agreement, at the Closing the Buyer will purchase from RGHI, and RGHI will sell to the Buyer, three hundred forty-nine and six/tenths (349.6) Voting Membership Interests, for cash equal to the Per Share Amount for each Voting Membership Interest. "Per Share Amount" means the quotient of the Aggregate Consideration Amount divided by the total number of Membership Interests issued and outstanding immediately prior to the Merger. "Aggregate Consideration Amount" means $2,250,000,000 minus the sum of (i) the total amount of Company Indebtedness outstanding as of immediately prior to the Closing (including amounts required to be repaid as a condition to the Closing in accordance with Section 6.2(l)), plus (ii) any out-of-pocket expenses or other additional amounts (other than interest accrued prior to the Closing), including prepayment premiums, that are required to be paid in order to fully repay as promptly as practicable in connection with or following the Closing any Company Indebtedness outstanding as of immediately prior to the Closing, plus (iii) any amounts that were paid by the Company or any of the Subsidiaries following February 29, 2004 and prior to the Closing for or in connection with the repayment of any Company Indebtedness (other than payments of interest accrued prior to such repayment), plus (iv) any amounts that have been paid following February 29, 2004 and prior to the Closing by the Company or any of the Subsidiaries that represent any deferred (whether or not contingent) obligation to pay purchase price or other consideration in connection with any acquisition of a business or any business combination transaction, plus (v) any Company Transaction Expenses in excess of $20,000,000 in the aggregate, plus (vi) any amounts payable by the Company pursuant to a Change in Control (as defined in the Memphis Holdings Purchase Agreement) pursuant to that certain Stock Purchase Agreement, dated as of January 2, 2001, between Memphis Holdings, LLC and the Company (the "Memphis Holdings Purchase Agreement"). The items in clauses (i) through (vi) collectively are referred to herein as the "Debt and Excess Expense Amount." The parties acknowledge and agree that it is their intention that the Per Share Amount will result in the net earnings or losses, as the case may be, of the Company and the Subsidiaries (other than the net earnings or losses, as the case may be, of the Asset Manager Entities), for all periods following February 29, 2004, accruing to the benefit of Persons who will be the owners of the Company from and following the Closing.

(b)   The number of Voting Membership Interests purchased by the Buyer pursuant to Section 1.1(a) may be reduced or increased at the election of the Buyer; provided, however, that such number of Voting Membership Interests cannot be increased above the number that can be purchased for $627,000,000 at the Per Share Amount. Such election to reduce or increase the number of purchased Voting Membership Interests will have the effect of increasing or reducing, respectively, the number of Voting Membership Interests held by RGHI that are converted into the right to receive cash pursuant to the Merger, as specified in Section 2.1(a). The Voting

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

Membership Interests purchased by the Buyer pursuant to Section 1.1(a) are referred to herein as the "Purchased Membership Interests."

(c) At the Closing, RGHI shall deliver to the Buyer certificate(s) representing the Purchased Membership Interests, duly endorsed in blank or accompanied by stock powers or any other proper instrument of assignment endorsed in blank in proper form for transfer. At the Closing, the Buyer shall pay to RGHI, in consideration for the Purchased Membership Interests, by wire transfer of immediately available funds to the account designated by RGHI, the cash amount provided in Section 1.1(a).

Section 1.2    **The Merger**. Upon the terms and subject to the conditions set forth in this Agreement, at the Closing at the time provided for in Section 1.6(b), and upon the terms and subject to the conditions in this Agreement and in accordance with the Delaware Limited Liability Company Act (the "DLLCA"), Merger Company shall be merged with and into the Company pursuant to the Merger. Following the Merger, the Company shall continue as the surviving limited liability company (the "Surviving Company") and the separate existence of Merger Company shall cease.

Section 1.3    **Effective Time**. Subject to the provisions of this Agreement, the Company and Merger Company shall cause the Merger to be consummated by filing an appropriate Certificate of Merger or other appropriate documents (the "Certificate of Merger") with the Secretary of State of the State of Delaware in such form as required by, and executed in accordance with, the relevant provisions of the DLLCA, on the Closing Date. The Merger shall become effective on the Closing Date at the time specified in Section 1.6(b) (the "Effective Time").

Section 1.4    **Effects of the Merger**. The Merger shall have the effects set forth in the DLLCA. Without limiting the foregoing, and subject thereto, at the Effective Time, all the properties, rights, privileges, powers and franchises of the Company and Merger Company shall vest in the Surviving Company, and all debts, liabilities and duties of the Company and Merger Company shall become the debts, liabilities and duties of the Surviving Company.

Section 1.5    **Limited Liability Company Agreement**. Upon the Effective Time, the limited liability company agreement of the Company shall be amended to read as set forth in the form attached hereto as Exhibit C (the "Amended and Restated Limited Liability Company Agreement").

Section 1.6    **Closing**.

(a) Time and Place of Closing. The closing of the transactions contemplated hereby (the "Closing") shall take place at 10:00 a.m., New York time, on a date to be specified by the Parties, which shall be no later than the second Business Day after satisfaction (or waiver) of the conditions set forth in Article 6 other than those conditions that, by their terms cannot be satisfied until the Closing (the "Closing Date"),

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

at the offices of Mayer, Brown, Rowe & Maw LLP, 1675 Broadway, New York, New York 10019, unless another time, date or place is agreed to in writing by the Parties.

(b) <u>Closing Procedures</u>. At the Closing, the following transactions will occur in the following chronological order: (i) the purchase of the Purchased Membership Interests in accordance with <u>Section 1.1</u>, (ii) the BAWAG Interest Transfer Transactions (in the order specified in <u>Section 5.13</u>), (iii) the distributions set forth in <u>Section 5.14</u> (subject, in the case of the $500 million cash distribution referred to in <u>Section 5.14</u>, to the provisions of <u>Section 5.9</u>), and (iv) the Merger.

**ARTICLE 2**
**CONVERSION OF MEMBERSHIP INTERESTS; PAYMENT OF**
**CONSIDERATION; CONTRIBUTION OF EQUITY INTERESTS**

**Section 2.1**    Conversion of Membership Interests.

(a)    At the Effective Time:

(i)    each outstanding Voting Membership Interest and Non-Voting Membership Interest held by RGHI that was acquired by RGHI pursuant to the BAWAG Interest Transfer Transactions (the "<u>BAWAG Transferred Interests</u>") shall, by virtue of the Merger and without any action on the part of the Company or Merger Company, be converted into one Class A Common Unit (as defined in the Amended and Restated Limited Liability Company Agreement) of the Surviving Company (each, a "<u>Class A Common Unit</u>");

(ii)    in the case of the number of outstanding Voting Membership Interests other than BAWAG Transferred Interests held by RGHI that is equal to the RGHI Equity Portion, each such outstanding Voting Membership Interest shall, by virtue of the Merger and without any action on the part of the Company or Merger Company, be converted into one Class A Common Unit;

(iii)    in the case of the outstanding Voting Membership Interests held by RGHI that are not converted into Class A Common Units in accordance with clauses (i) and (ii) above, each such outstanding Voting Membership Interest shall, by virtue of the Merger and without any action on the part of the Company or Merger Company, be converted into the right to receive, subject to the terms and conditions of this Agreement, the Per Share Amount in cash;

(iv)    each of the Purchased Membership Interests shall, by virtue of the Merger and without any action on the part of the Company or Merger Company, be converted into one Class A Common Unit; and

(v)    in the case of the outstanding membership interests of Merger Company, each membership interest automatically shall be canceled and

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

retired and shall cease to exist, without any conversion thereof, and no consideration shall be delivered in exchange therefor.

(b) <u>Surrender of Certificates</u>. At the Closing, each holder of Membership Interests will surrender to the Surviving Company each certificate that represents Membership Interests held by such holder. Upon the proper receipt of such certificates from any such holder, such holder will be entitled to receive (i) cash in the amount provided in <u>Section 2.1(a)</u> for any Membership Interests of such holder that were converted into the right to receive the Per Share Amount, and (ii) certificates representing any Class A Common Units issued to such holder pursuant to the Merger for any Membership Interests of such holder that were converted into the right to receive one Class A Common Unit for each such Membership Interest.

(c) <u>No Further Ownership Rights</u>. From and following the Effective Time, the Membership Interests shall be extinguished and thereafter shall not represent any right of ownership in the Company or the Surviving Company but, instead, will represent only the right to receive cash or Class A Common Units as provided in this <u>Article 2</u>.

**Section 2.2** <u>**Debt and Excess Expense Amount; Payment of Cash at Closing**</u>. A reasonable period of time prior to the Closing Date, the Company shall provide to the Buyer (a) a calculation reflecting the Debt and Excess Expense Amount and (b) supporting documentation sufficient for the Buyer to fully verify the Debt and Excess Expense Amount, which documentation will include statements from relevant attorneys, accountants, advisors and investment bankers reflecting the total fees and expenses of such professionals that would be included as Company Transaction Expenses.

**Section 2.3** <u>**Escrow**</u>. Notwithstanding the provisions of <u>Sections 1.1</u> and <u>2.1</u>, at the Closing, $39,014,313 (the "<u>Post Closing Earn-Out Escrow Amount</u>") that otherwise would be paid in cash at the Closing to RGHI instead shall be deposited by the Buyer and the Surviving Company (on a pro rata basis in accordance with the respective amounts of cash otherwise being paid by the Buyer and the Surviving Company to RGHI at the Closing) with HSBC Bank USA (the "<u>Escrow Agent</u>") pursuant to the Escrow Agreement in substantially the form attached hereto as <u>Exhibit D</u> with other reasonable changes as the Escrow Agent may request (the "<u>Escrow Agreement</u>"). The Post Closing Earn-Out Escrow Amount will reduce the cash amount paid at the Closing to RGHI.

**Section 2.4** <u>**Post Closing Earn-Out Amounts**</u>. When any particular Post Closing Earn-Out Amount is required to be paid following the Closing, such amount shall be paid to the Surviving Company out of the specific portion of the Post Closing Earn-Out Escrow Amount that is allocated to such particular Post Closing Earn-Out Amount on <u>Schedule 2.4</u>. If the portion of the Post Closing Earn-Out Escrow Amount that is allocated to such Post Closing Earn-Out Amount on <u>Schedule 2.4</u> is insufficient to pay such amount or if no portion of the Post Closing Earn-Out Escrow Amount is allocated to such Post-Closing Earn-Out Amount, then RGHI shall be liable for such deficiency. If

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

any portion of the Post Closing Earn-Out Escrow Amount that is allocated to a particular Post Closing Earn-Out Amount on Schedule 2.4 remains after such Post Closing Earn-Out Amount has been satisfied in full, such remaining amount will be paid to RGHI.

**Section 2.5** **Contribution of Equity Interests**. Immediately following the Merger, the Surviving Company shall (a) contribute to Finance Company all of the equity interests in any Subsidiary that are owned directly by the Surviving Company and (b) cause Finance Company to distribute to the Surviving Company, on account of such contribution, the net proceeds received by Finance Company from the debt financing transactions referred to in Section 6.2(f). Such net proceeds shall provide the cash that is to be paid at the Closing by the Surviving Company on account of the Merger.

# ARTICLE 3
# REPRESENTATIONS AND WARRANTIES OF RGHI

RGHI hereby represents and warrants to the Buyer as follows:

**Section 3.1** **Organization of the Company**. The Company is a limited liability company duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, and is qualified to do business in, and is in good standing under the laws of, each jurisdiction where the failure to so qualify has had or would reasonably be expected to have a Material Adverse Effect. Each Subsidiary is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation and is qualified to do business as a foreign entity in, and is in good standing under the laws of each jurisdiction in which the failure to so qualify has had or would reasonably be expected to have a Material Adverse Effect. Each Subsidiary has all requisite power and authority to own, lease and operate its properties and to carry on its business as presently being, and contemplated to be, conducted. The Company has all requisite power and authority to own, lease and operate its properties, and to carry on its business as presently being, and contemplated to be, conducted. The corporate minute books of the Company's predecessor, the limited liability company minute books of the Company and the minute books of each Subsidiary previously made available to the Buyer are true, correct and complete and contain the minutes of all the meetings of, and other actions taken by, the Company's or such Subsidiary's directors, managers, officers, members and stockholders through the date hereof. RGHI is duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation or formation.

**Section 3.2** **Authorization.** The Company and RGHI have all requisite power and authority to execute and deliver this Agreement and the other agreements and instruments executed by each in connection herewith, perform its respective obligations hereunder and thereunder, and consummate the transactions contemplated hereby and thereby. The Company and RGHI have duly authorized the execution, delivery and performance of this Agreement. This Agreement has been duly executed and delivered by the Company and RGHI and is a valid and binding obligation of the Company and RGHI, enforceable against each in accordance with its terms, except as such

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

enforceability may be limited by applicable bankruptcy, insolvency, moratorium, reorganization or similar laws in effect that affect the enforcement of creditors' rights generally and by equitable limitations on the availability of specific remedies and by principles of equity (collectively, "Enforceability Limitations"). No other proceedings on the part of the Company or RGHI are necessary to authorize the execution and delivery of this Agreement by the Company and RGHI, or the performance by the Company and RGHI of the obligations of each hereunder, and the consummation by the Company and RGHI of the transactions contemplated hereby.

Section 3.3   **Capitalization of the Company.**   All of the outstanding Membership Interests have been duly authorized and are validly issued, duly paid and non-assessable. None of the Membership Interests were issued in violation of any preemptive or similar rights of any other person or entity, nor in violation of the United States Securities Act of 1933, as amended (the "Securities Act"), or applicable securities laws of any other jurisdiction. Exhibit A hereto sets forth a true, complete and correct list of all of the members of the Company immediately preceding the execution and delivery of this Agreement and the number of Membership Interests owned by each such Member. Except for this Agreement and as described in Schedule 3.3, there are no other agreements, written or oral, between the Company or any Subsidiary and any holder of its respective equity interests, relating to the acquisition, disposition or voting of its equity interests. There are no outstanding subscriptions, options, warrants, calls, commitments or any other agreements of any character obligating the Company or any Subsidiary to issue any equity interests at any time or under any circumstance, including conversion of debt into equity and including any rights to receive securities in any public offering by the Company or its successors, except as disclosed in Schedule 3.3. RGHI owns the Membership Interests reflected as owned by it on Exhibit A hereto, free and clear of all Liens. Upon effectiveness of the BAWAG Interest Transfer Transactions (and in any event as of the time immediately prior to the Merger), RGHI will own the Membership Interests reflected as owned by BOI on Exhibit A hereto, free and clear of all Liens. The Company and each of the Subsidiaries that are subject to such minimum net capital requirements maintains and has at all times maintained net capital in excess of the minimum level(s) of net capital required by the SEC, CFTC, CME or other applicable Governmental Authorities or Self Regulatory Organizations by an amount sufficient in order to avoid the triggering of any "early warning" notification provisions or similar provisions.

Section 3.4   **No Conflict or Violation.**   The execution, delivery and performance by the Company and RGHI of this Agreement and the consummation by the Company and RGHI of the transactions contemplated hereby do not and will not (1) conflict with or violate any provision of the Organizational Documents of RGHI or the Company or any of the Subsidiaries; (2) except as set forth on Schedule 3.4, violate, conflict with or constitute or result in (or with notice, lapse of time or both become) a default or a breach under or result in the acceleration, termination or cancellation of (or entitle any Person or give any Person the right to accelerate, terminate or cancel) any obligation under any contract or agreement to which RGHI or the Company or any of the

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

Subsidiaries is a party or by which any of the assets or property of RGHI or the Company or any of the Subsidiaries is bound, except for any of such matters or consequences that would not reasonably be expected to have a Material Adverse Effect or adversely affect the ability of RGHI to consummate the transactions contemplated by this Agreement; or (3) contravene or violate any law, statute, rule or regulation applicable to RGHI or the Company or any of the Subsidiaries or any of their respective assets or properties, or any Governmental Order to which RGHI or the Company or any of the Subsidiaries is a party or by which any of them or any of their respective assets or properties is bound, except for any of such matters or consequences that would not reasonably be expected to have a Material Adverse Effect or adversely affect or restrict the ability of RGHI to consummate the transactions contemplated by this Agreement.

Section 3.5  **Governmental and Third Party Consents**.  Except for (1) compliance with Antitrust Laws, (2) the filing of amended registration forms with the applicable futures and securities authorities, (3) approval by each Self-Regulatory Organization of which a Subsidiary is a member, and (4) the other actions set forth on Schedule 3.5, the execution, delivery and performance by the Company and RGHI of this Agreement and the consummation by the Company and/or RGHI of the transactions contemplated hereby do not and will not, to the knowledge of the Company, require RGHI, the Company or any Subsidiary to obtain the approval, consent or authorization of, to make any declaration, filing or registration with, or to give notice to, any Governmental Authority, any Self-Regulatory Organization or any other Person, except to the extent the failure to obtain, make or give any of the foregoing would not reasonably be expected to have a Material Adverse Effect.  Schedule 3.5 sets forth each of the approvals or consents of any Self-Regulatory Organization of which a Subsidiary is a member that, to the knowledge of the Company, is required to be obtained by the Company or any Subsidiary as a result of the execution and delivery of this Agreement by the Company or RGHI or the consummation by the Company and RGHI of the transactions contemplated hereby.

Section 3.6  **Compliance with Law; Permits**.  Except as set forth on Schedule 3.6, the Company possesses, and all Subsidiaries possess, all Permits that are material to the operation of their respective businesses as presently conducted and as presently intended to be conducted, all such Permits are in full force and effect, and the Company or the applicable Subsidiary has filed all required amendments to such Permits. The Company and each Subsidiary is in compliance with (and has conducted its business so as to comply with), all Laws and Governmental Orders of any Governmental Authority applicable to their respective operations or with respect to which compliance is a condition of engaging in the business thereof except for non-compliance that has not had and would not reasonably be expected to have a Material Adverse Effect. Neither the Company nor any Subsidiary has received any extraordinary supervisory letter from, or adopted any resolutions at the request of, any Self-Regulatory Organization or Governmental Authority charged with the supervision or regulation of any Subsidiary. Except as set forth on Schedule 3.6, to the knowledge of the Company, neither the

DA1:\367401\22\7VHL22!.DOC\77356.0036            8                              MB02055022

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

Company nor any Subsidiary is under investigation with respect to the violation of any Laws.

**Section 3.7** <u>No Defaults</u>. Neither the Company nor any Subsidiary is, or has received notice that with the passage of time it would be, in violation of any provision of its Organizational Documents. Neither the Company nor any Subsidiary has received notice that it is or would be with the passage of time, in default or violation of any term, condition or provision of (i) any Governmental Order or stipulation applicable to it, or (ii) any agreement, note, mortgage, indenture, contract, lease, instrument, permit, concession, franchise or license to which it is a party or by which any of them or their respective properties or assets may be bound or affected, other than any default or violation that has not had and would not reasonably be expected to have a Material Adverse Effect.

**Section 3.8** <u>Subsidiaries</u>. Except for the Subsidiaries listed in <u>Exhibit B</u> and the investments listed in <u>Schedule 3.8</u> and any other investments valued at $1,000,000 or less, the Company does not have, directly or indirectly, any ownership interest or other investment in any corporation, association, partnership, business, trust or other entity. <u>Exhibit B</u> lists each Subsidiary's jurisdiction of incorporation. Except as set forth on <u>Exhibit B</u> or on <u>Schedule 3.8</u>, each outstanding share of capital stock of, or other ownership interests in, each of the Subsidiaries or other entity in which any interest exists is owned by the Company and is duly authorized, validly issued, fully paid and nonassessable and each such share or other interest owned by the Company or any Subsidiary is free and clear of all Liens.

**Section 3.9** <u>Financial Statements</u>. The Company has furnished to the Buyer true, complete and accurate copies of its audited consolidated financial statements at and for the fiscal years ended February 28, 2002, February 28, 2003 and February 29, 2004, and the related audited statements of income and cash flows for the periods then ended, (such financial statements and accompanying notes and schedules are collectively referred to herein as the "<u>Financial Statements</u>").

(a) The Financial Statements have been prepared from the books and records of the Company and its Subsidiaries on a consolidated basis, present fairly in all material respects the consolidated financial position, results of operations and cash flows of the Company and its Subsidiaries on a consolidated basis at and for the periods stated therein, and, except as may be noted in the notes thereto, are in conformity with generally accepted accounting principles and practices in the United States consistently applied ("<u>GAAP</u>").

(b) The books and records of the Company and its Subsidiaries on a consolidated basis have been maintained in all material respects in accordance with applicable accounting requirements, reflect only bona fide transactions, are complete and correct and accurately reflect the basis for the financial position, results of operations and cash flows of the Company and its Subsidiaries on a consolidated basis as set forth in the Financial Statements. The Company and each of the Subsidiaries maintains systems of

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP

internal accounting controls sufficient to provide commercially reasonable assurances that all assets and transactions are accounted for in accordance with GAAP.

(c) Except for operating guarantees of obligations of any Subsidiary made by the Company or any Subsidiary in the ordinary course of business or as reflected in the Financial Statements, neither the Company nor any of the Subsidiaries on a consolidated basis has any debt, guaranty, liability, claim or obligation of any nature, whether accrued, absolute, contingent or otherwise, whether due or to become due, and whether known or unknown, and no basis exists for the assertion against the Company and the Subsidiaries on a consolidated basis of any such debt, guaranty, liability, claim or obligation, except current liabilities incurred, and obligations under agreements entered into, in the ordinary course of business.

(d) All reserves established by the Company and the Subsidiaries on a consolidated basis with respect to assets of the Company and the Subsidiaries on a consolidated basis are adequate to the knowledge of the Company at the time created, and there has been no change in the accounting policies of the Company and the Subsidiaries on a consolidated basis, except as described in the notes to the Financial Statements.

Section 3.10 **Absence of Undisclosed Liabilities**. Neither the Company nor any Subsidiary has any liabilities or obligations (whether absolute, accrued or contingent, and whether or not determined or determinable) of a character which, under GAAP, should be accrued, shown or disclosed on a balance sheet of the Company (including the Subsidiaries on a consolidated basis) included in the Financial Statements (including the footnotes thereto), except liabilities (i) adequately provided for in the balance sheets included in the Financial Statement (the "Balance Sheets"), (ii) incurred in the ordinary course of business and not required under GAAP to be reflected on the Balance Sheets, (iii) incurred since the date of the Balance Sheets and which are not, individually or in the aggregate, material, or (iv) except for Liabilities set forth on Schedule 3.10.

Section 3.11 **Absence of Certain Changes**. Except as set forth on Schedule 3.11, since March 1, 2004, there has not been: (a) any event that has had or would reasonably be expected to have a Material Adverse Effect, (b) any damage, destruction or loss with respect to the Company or any Subsidiary, whether covered by insurance or not, that would reasonably be expected to have a Material Adverse Effect, or (c) any event, action or occurrence that would have violated Section 5.1 if this Agreement had been in effect at all times since such date.

Section 3.12 **Interests of Officers and Directors**. Except as set forth on Schedule 3.12, since March 1, 2003, no officer, manager, director, or member of the Company or any Subsidiary, or any Affiliate of any such officer, director, member or other equity holder, has had, either directly or indirectly, a material interest in any contract or agreement to which the Company or any Subsidiary is a party or by which any of their properties or assets may be bound or affected, except for employment contracts entered into on an arm's-length basis.

CONFIDENTIAL TREATMENT
REQUESTED BY
WILLIAMS AND CONNOLLY LLP