UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                   :

THOMAS H. LEE EQUITY FUND V, L.P.,     :
THOMAS H. LEE PARALLEL FUND V, L.P.,   :
and THOMAS H. LEE EQUITY (CAYMAN)    :        07 Civ. 6767 (GEL)
FUND V, L.P.,                            :
                                   :
                   Plaintiffs,       :
      v.                                  :
                                   :
MAYER, BROWN, ROWE & MAW LLP,      :
                                   :
                   Defendant.      :
                                   :
------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS

<div style="columns:2">

Mark C. Hansen
Silvija A. Strikis
James M. Webster III
Rebecca A. Beynon
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel.:  (202) 326-7900

Greg A. Danilow (GD-1621)
Paul Dutka (PD-2568)
Christopher R.J. Pace (CP-0001)
Seth Goodchild (SG-2296)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
Tel.:  (212) 310-8000

*Attorneys for Plaintiffs Thomas H. Lee
Equity Fund V, L.P., Thomas H. Lee
Parallel Fund V, L.P., and Thomas H. Lee
Equity (Cayman) Fund V, L.P.*

</div>

Dated: May 23, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT .................................................................................................................... 6

I.  THE AMENDED COMPLAINT STATES A SECURITIES FRAUD CLAIM ............... 6

   A.  Mayer Brown Is Liable as a Primary Violator of Rule 10b-5(b) for its
       Material Misstatements and Omissions to the THL Funds ............................ 6

   B.  Mayer Brown's "Mere Conduit" Defense Is Meritless ................................ 10

   C.  Mayer Brown's "No Reliance" Argument Is Fatally Flawed ........................ 18

       1.  The Non-Reliance and Integration Clauses Do Not Bar the THL
           Funds' Misrepresentation Claim ......................................................... 18

       2.  The THL Funds Have Adequately Pleaded Transaction Causation ........ 22

   D.  The THL Funds Have Alleged Particularized Facts Giving Rise to a
       Strong Inference of Scienter ....................................................................... 24

   E.  Plaintiffs' Factual Allegations State a Claim for "Scheme Liability" Under
       Section 10(b) and Rule 10b-5(a) & (c) ....................................................... 31

II. THE AMENDED COMPLAINT STATES A RICO CLAIM ..................................... 36

   A.  The PSLRA Does Not Bar the THL Funds' RICO Claim ............................. 36

   B.  The Amended Complaint Clearly Pleads a Conspiratorial Agreement ........... 44

   C.  The Amended Complaint Pleads a Violation of § 1962(c) ........................... 48

III. THE THL FUNDS HAVE STATED CLAIMS FOR COMMON-LAW FRAUD
    AND NEGLIGENT MISREPRESENTATION .......................................................... 52

   A.  Massachusetts Law Presumptively Governs the THL Funds' Common-
       Law Claims ................................................................................................. 52

   B.  The THL Funds Have Stated a Claim for Common-Law Fraud .................... 55

   C.  The THL Funds' Negligent Misrepresentation Claim Is Not Barred by
       New York's Martin Act .............................................................................. 56

   D.  The THL Funds Have Adequately Alleged That Mayer Brown Owed a
       Duty Not to Make Negligent Misrepresentations to the THL Funds ............. 57

CONCLUSION .............................................................................................................. 60

## TABLE OF AUTHORITIES

**Cases:**                                                                        **Page(s):**

Abry Partners V, L.P. v. F&W Acquisition L.L.C.,
    891 A.2d 1032 (Del. Ch. 2006).............................................................21

Ackerman v. Schwartz,
    947 F.2d 841 (7th Cir. 1991) .....................................................9, 12, 13

Adelphia Commc'ns Corp. v. Bank of Am., N.A.
    (In re Adelphia Commc'ns Corp.),
    2007 WL 2403553 (Bankr. S.D.N.Y. Aug. 17, 2007) ...........................49

Aetna Cas. & Sur. Co. v. P&B Autobody,
    43 F.3d 1546 (1st Cir. 1994)..............................................................56

Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc.,
    944 F. Supp. 240 (S.D.N.Y. 1996) ......................................................46

Am. Preferred Prescription, Inc. v. Health Mgmt., Inc.,
    252 A.D.2d 414 (N.Y. App. Div. 1998) .................................................56

Am. Tobacco Co. v. Patterson,
    456 U.S. 63 (1982)..........................................................................44

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
    357 F. Supp. 2d 712 (S.D.N.Y. 2005),
    aff'd, 493 F.3d 87 (2d Cir. 2007)........................................................21

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007)......................................................20, 21, 22

BT Triple Crown Merger Co., Inc. v. Citigroup Global Mkt. Inc.,
    19 Misc. 3d 1129(A) (text available at 2008 WL 1970900)
    (N.Y. Sup. Ct. May 7, 2008)...............................................................53

Baisch v. Gallina,
    346 F.3d 366 (2d Cir. 2003)............................................................35, 46

Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.,
    189 F.3d 321 (3d Cir. 1999)............................................................39, 40

Basic Inc. v. Levinson,
    485 U.S. 224 (1988)..........................................................................35

Bates v. Southgate,
    31 N.E.2d 551 (Mass. 1941) ............................................................................21

Bell Atl. Corp. v. Twombly,
    127 S. Ct. 1955 (2007) ............................................................................46, 47

Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.,
    36 F. Supp. 2d 560 (E.D.N.Y. 1999) ......................................................43

Bonavire v. Wampler,
    779 F.2d 1011 (4th Cir. 1985) ................................................................13

Burnett v. Rowzee,
    2008 WL 638503 (C.D. Cal. Feb. 11, 2008) ..........................................35

Caiola v. Citibank, N.A.,
    295 F.3d 312 (2d Cir. 2002) .................................................................9, 12

Campos v. INS,
    961 F.2d 309 (1st Cir. 1992) ..................................................................44

Castellano v. Young & Rubicam, Inc.,
    257 F.3d 171 (2d Cir. 2001) ...............................................................23, 57

Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,
    511 U.S. 164 (1994) ..................................................................................8

Cheswell, Inc. v. Premier Homes & Land Corp.,
    319 F. Supp. 2d 144 (D. Mass. 2004) .....................................................58

Cromer Fin. Ltd. v. Berger,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001) .....................................................53

Cromer Fin. Ltd. v. Berger,
    2001 WL 1112548 (S.D.N.Y. Sept. 19, 2001) ........................................57

Crossland Sav. FSB v. Rockwood Ins. Co.,
    700 F. Supp. 1274 (S.D.N.Y. 1988) ........................................................59

Crowley v. Montgomery Ward & Co.,
    570 F.2d 875 (10th Cir. 1975) .................................................................37

In re Crude Oil Commodity Litig.,
    2007 WL 1946553 (S.D.N.Y. June 28, 2007) .........................................51

In re DVI Inc. Sec. Litig., 2008 WL 1900384 (E.D. Pa. Apr. 29, 2008) ......................................36

DeFalco v. Bernas,
    244 F.3d 286 (2d Cir. 2001)..................................................................................................51, 52

Dimon Inc. v. Folium, Inc.,
    48 F. Supp. 2d 359 (S.D.N.Y. 1999)............................................................................................21

Diodato v. Eastchester Dev. Corp.,
    111 A.D.2d 303 (N.Y. App. Div. 1995) .......................................................................................19

Divine Tower Int'l Corp. v. Kegler, Brown, Hill & Ritter Co.,
    2007 WL 2572258 (S.D. Ohio Sept. 4, 2007) .............................................................................12

Doehla v. Wathne Ltd.,
    1999 WL 566311 (S.D.N.Y. Aug. 3, 1996) .................................................................................59

Dutton v. Glass,
    2005 WL 146503 (S.D.N.Y. Jan. 20, 2005) ................................................................................53

Emergent Capital Inv. Mgmt., L.L.C. v. Stonepath Group, Inc.,
    343 F.3d 189 (2d Cir. 2003)........................................................................................................20

In re Enron Corp. Sec., Derivative & ERISA Litig.,
    284 F. Supp. 2d 511 (S.D. Tex. 2003) ...................................................................................42, 43

E*Trade Fin. Corp v. MarketXT Holdings Corp.
    (In re MarketXT Holdings Corp.),
    2006 WL 2864963 (Bankr. S.D.N.Y. Sept. 29, 2006)...............................................................21

Fezzani v. Bear, Stearns & Co.,
    2005 WL 500377 (S.D.N.Y. Mar. 2, 2005) ................................................................................42

First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004)........................................................................................................50

First Marblehead Corp. v. House,
    473 F.3d 1 (1st Cir. 2006)...........................................................................................................57

Fleet Nat'l Bank v. Boyle,
    2005 WL 2455673 (E.D. Pa. Sept. 12, 2005) .............................................................................37

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. L.L.C.,
    376 F. Supp. 2d 385 (S.D.N.Y. 2005)....................................................................................54, 56

Friedman v. Ariz. World Nurseries Ltd.,
    730 F. Supp. 521 (S.D.N.Y. 1990), aff'd sub nom.
    Clark v. Ariz. World Nurser, 927 F.2d 594 (2d Cir. 1991) ....................................15

Friedman v. Hartmann,
    1994 WL 97104 (S.D.N.Y. Mar. 23, 1994) ..........................................................59

Gaetano Assocs. Ltd. v. Artee Collections, Inc.,
    2006 WL 330322 (S.D.N.Y. Feb. 14, 2006)..........................................................55

Gas Natural v. E.ON AG,
    468 F. Supp. 2d 595 (S.D.N.Y. 2006).....................................................................9

Gen. Accident Ins. Co. v. Fidelity & Deposit Co.,
    598 F. Supp. 1223 (E.D. Pa. 1984) .......................................................................55

In re Gen. Elec. Sec. Litig.,
    WL 590639 (S.D.N.Y. Oct. 4, 1995), aff'd sub nom.
    Chill v. Gen. Elec. Co., 101 F.3d 263 (2d Cir. 1996) .........................................15

Gilmore v. Berg,
    761 F. Supp. 358 (D.N.J. 1991) ............................................................................13

Gintowt v. TL Ventures,
    226 F. Supp. 2d 672 (E.D. Pa. 2002) ....................................................................39

In re Global Crossing, Ltd. Sec. Litig.,
    322 F. Supp. 2d 319 (S.D.N.Y. 2004).........................................................12, 31, 32

Goren v. New Vision Int'l, Inc.,
    156 F.3d 721 (7th Cir. 1998) ................................................................................48

Harbourvest Int' Private Equity Partners II – Direct Fund, L.P. v. Axent Techs., Inc.,
    2000 WL 1466096 (Mass. Super. Aug. 31, 2000) ................................................56

Harrison v. Dean Witter Reynolds, Inc.,
    79 F.3d 609 (7th Cir. 1996) ..................................................................................20

Harrison v. Rubenstein,
    2007 WL 582955 (S.D.N.Y. Feb. 26, 2007)..........................................................22

Harsco Corp. v. Segui,
    91 F.3d 337 (2d Cir. 1996).....................................................................................20

Hecht v. Commerce Clearing House, Inc.,
    897 F.2d 21 (2d Cir. 1990).....................................................................................46

Hemispherx Biopharma, Inc. v. Asensio,
    1999 WL 144109 (E.D. Pa. Mar. 15, 1999)......................................................42, 43

Henry v. Daytop Village, Inc.,
    42 F.3d 89 (2d Cir. 1994)...........................................................................................37

H.J. Inc. v. Nw. Bell Tel. Co.,
    492 U.S. 229 (1989)....................................................................................................50

Hollinger Int'l, Inc. v. Hollinger Inc.,
    2004 WL 2278545 (N.D. Ill. Oct. 8, 2004)...............................................................42

Holmes v. Sec. Investor Prot. Corp,
    503 U.S. 258 (1992)....................................................................................................39

Howard v. AOL Inc.,
    208 F.3d 741 (9th Cir. 2000) .....................................................................................42

HSA Residential Mortgage Servs. of Tex. v. Casuccio,
    350 F. Supp. 2d 352 (E.D.N.Y. 2003) .......................................................................53

Hunt v. Alliance N. Am. Gov't Income Trust, Inc.,
    159 F.3d 723 (2d Cir. 1998).......................................................................................10

In re JP Morgan Chase Sec. Litig.,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005)........................................................................24

Jackvony v. RIHT Fin. Corp.,
    873 F.2d 411 (1st Cir. 1989).......................................................................................20

Jones v. Deutsche Bank AG,
    2005 WL 1683614 (N.D. Cal. July 19, 2005)............................................................37

Kehr Packages, Inc. v. Fidelcor, Inc.,
    926 F.2d 1406 (3d Cir. 1991)......................................................................................49

In re Kidder Peabody Sec. Litig.,
    10 F. Supp. 2d 398 (S.D.N.Y. 1998)....................................................................14, 15

Kirkland Constr. Co. v. James,
    658 N.E.2d 699 (Mass. App. Ct. 1995) ...............................................................57, 58

Kline v. First W. Gov't Sec., Inc.,
    24 F.3d 480 (3d Cir. 1994).................................................................................10, 11, 13

Knoll v. Schectman,
    2006 WL 839428 (W.D.N.Y. Mar. 28, 2006),
    aff'd, 2008 WL 1868440 (2d Cir. Apr. 25, 2008)..............................45

Krock v. Lipsay,
    97 F.3d 640 (2d Cir. 1996)........................................................54, 55

Kurker v. Hill,
    689 N.E.2d 833 (Mass. App. Ct. 1998) ......................................56

LaSala v. Bank of Cyprus Pub. Co.,
    510 F. Supp. 2d 246 (S.D.N.Y. 2007).........................................53

Lamare v. Basbanes,
    636 N.E.2d 218 (Mass. 1994) ...............................................57, 58

Lattanzio v. Deloitte & Touche L.L.P.,
    476 F.3d 147 (2d Cir. 2007)..................................................4, 8, 9

Lentell v. Merrill Lynch & Co.,
    396 F.3d 161 (2d Cir. 2005)................................................32, 34

Levin v. Dalva Bros.,
    459 F.3d 68 (1st Cir. 2006)......................................................55

Ling v. Deutsche Bank, AG,
    2005 WL 1244689 (S.D.N.Y. May 26, 2005) ............................38,

Lippe v. Bairnco Corp.,
    218 B.R. 294 (S.D.N.Y. 1998).................................................48

M'Baye v. N.J. Sports Prod., Inc.,
    2007 WL 431881 (S.D.N.Y. Feb. 7, 2007).................................50

Marram v. Kobrick Offshore Fund, Ltd.,
    809 N.E.2d 1017 (Mass. 2004) ................................................56

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,
    547 U.S. 71 (2006).................................................................38

Mezzonen, S.A. v. Wright,
    1999 WL 1037866 (S.D.N.Y. Nov. 16, 1999)............................39

Missouri v. Jenkins,
    515 U.S. 70 (1995)................................................................35

Nat'l Group for Commc'ns & Computers Ltd. v. Lucent Techs. Inc.,
   420 F. Supp. 2d 253 (S.D.N.Y. 2006)...................................................................48

Nat'l Treasury Employees Union v. Chertoff,
   452 F.3d 839 (D.C. Cir. 2006).............................................................................40

Ne. Women's Ctr., Inc. v. McMonagle,
   868 F.2d 1342 (3d Cir. 1989)...............................................................................43

Norton v. Drepanos,
   1994 WL 902881 (Mass. Super. Sept. 13, 1994)..................................................20

Nota Constr. Corp. v. Keyes Assocs.,
   694 N.E.2d 401 (Mass. App. Ct. 1998) ................................................................57

OSRecovery, Inc. v. One Groupe Int'l, Inc.,
   354 F. Supp. 2d 357 (S.D.N.Y. 2005)..................................................................41

One Nat'l Bank v. Antonellis,
   80 F.3d 606 (1st Cir. 1996).................................................................................58

One-O-One Enters., Inc. v. Caruso,
   848 F.2d 1283 (D.C. Cir. 1988)...........................................................................20

Overton v. Todman & Co., CPAs, P.C.,
   478 F.3d 479 (2d Cir. 2007).................................................................................9

In re Parmalat Sec. Litig.,
   383 F. Supp. 2d 616 (S.D.N.Y. 2005)..................................................................32

Payton v. Flynn,
   2006 WL 3087075 (N.D. Ill. Oct. 26, 2006)...................................................41, 42

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C.,
   446 F. Supp. 2d 163 (S.D.N.Y. 2006)..................................................................53

Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.,
   940 F. Supp. 1101 (W.D. Mich. 1996) .................................................................15

Powers v. Wells Fargo Bank NA,
   439 F.3d 1043 (9th Cir.),
   cert. denied, 127 S. Ct. 437 (2006) ......................................................................40

Proforma Partners, L.P. v. Skadden Arps Slate Meagher & Flom, L.L.P.,
   280 A.D.2d 303 (N.Y. App. Div. 2001) ...............................................................53

Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood,
    80 N.Y.2d 377 (1992) ................................................................................59

In re Refco, Inc. Sec. Litig.,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007).........................................24, 25, 25, 30, 31

Regents of Univ. of Cal.. v. Credit Suisse First Boston (USA), Inc.,
    482 F.3d 372 (5th Cir. 2007),
    cert. denied, 128 S. Ct. 1120 (2008) .............................................................33, 35

Renner v. Chase Manhattan Bank,
    1999 WL 47239 (S.D.N.Y. Feb. 3, 1999).........................................................41

Republic of Colombia v. Diageo N. Am. Inc.,
    531 F. Supp 2d 365 (E.D.N.Y. 2007) ...........................................................45, 46

Resolution Trust Corp. v. Latham & Watkins,
    909 F. Supp. 923 (S.D.N.Y. 1995) ................................................................10

Rissman v. Rissman,
    213 F.3d 381 (7th Cir. 2000) .......................................................................20

Rose v. Bartle,
    871 F.2d 331 (3d Cir. 1989)......................................................................46, 47

Rothman v. Gregor,
    220 F.3d 81 (2d Cir. 2000)...........................................................................24

Rubin v. Schottenstein, Zox & Dunn,
    143 F.3d 263 (6th Cir. 1998) ...................................................................9, 12, 13

Rudin v. Dow Jones & Co.,
    510 F. Supp. 210 (S.D.N.Y. 1981) .................................................................55

Salinas v. United States,
    522 U.S. 52 (1997)....................................................................................44

Scalp & Blade, Inc. v. Advest, Inc.,
    281 A.D.2d 882 (N.Y. App. Div. 2001) ...........................................................57

Schatz v. Rosenberg,
    943 F.2d 485 (4th Cir. 1991) .....................................................................13, 14

SEC v. Zanford,
    535 U.S. 813 (2002)...................................................................................38

Sedima, S.P.L.R. v. Imrex Co.,
    473 U.S. 479 (1985).................................................................................43, 44

Shapiro v. Cantor,
    123 F.3d 717 (2d Cir. 1997)..............................................................4, 8, 9

Simon v. Philip Morris Inc.,
    124 F. Supp. 2d 46 (E.D.N.Y. 2000) ...................................................54

Smith Barney, Harris Upham & Co. v. Luckie,
    85 N.Y.2d 193 (1995)...........................................................................53

Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,
    365 F.3d 353 (5th Cir. 2004) ...............................................................24

Spira v. Nick,
    876 F. Supp. 553 (S.D.N.Y. 1995) ......................................................49

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,
    375 F. Supp. 2d 141 (E.D.N.Y. 2005) .................................................46

Steed Fin. LDC v. Nomura Sec. Int'l, Inc.,
    2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001).........................54, 55, 56

Sterling Interiors Groups, Inc. v. Haworth, Inc.,
    1996 WL 426379 (S.D.N.Y. July 30, 1996) ........................................52

Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.,
    2001 WL 282687 (S.D.N.Y. Mar. 22, 2001) .......................................51

Stoneridge Inv. Partners, L.L.C. v. Scientific Atlanta, Inc.,
    128 S. Ct. 761 (2008)........................................5, 33, 34, 35, 36

Suez Equity Investors, L.P. v. Toronto Dominion Bank,
    250 F.3d 87 (2d Cir. 2001).............................................................16, 57

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    127 S. Ct. 2499 (2007).........................................................................25

Triestman v. United States,
    124 F.3d 361 (2d Cir. 1997).................................................................35

Trioano v. Tuccio,
    227 A.D.2d 467 (N.Y. App. Div. 1996) ..............................................19

United States v. Aulicino,
    44 F.3d 1102 (2d Cir. 1995)...................................................................................52

United States v. Zichettello,
    208 F.3d 72 (2d Cir. 2000).....................................................................................46

In re Veeco Instruments, Inc. Sec. Litig.,
    235 F.R.D. 220 (S.D.N.Y. 2006) ...........................................................................23

Williams v. Sidley Austin Brown & Wood, L.L.P.,
    13 Misc. 3d 1213(A)(N.Y. Sup. Ct. 2006).............................................................56

Winkler v. NRD Mining, Ltd.,
    198 F.R.D. 355 (E.D.N.Y. 2000) ...........................................................................15

Wittenberg v. Robinov,
    9 N.Y.2d 261 (1961) ...............................................................................................19

In re WorldCom, Inc.,
    374 B.R. 94 (Bankr. S.D.N.Y. 2007)......................................................................19

In re Worldcom, Inc. Sec. Litig.,
    352 F. Supp. 2d 472 (S.D.N.Y. 2005).....................................................................24

Wright v. Ernst & Young, L.L.P.,
    152 F.3d 169 (2d Cir. 1998)............................................................................4, 8, 9

Zito v. Leasecomm Corp.,
    2003 WL 22251352 (S.D.N.Y. Sept. 30, 2003).....................................................50

Zito v. Leasecomm Corp.,
    2004 WL 2211650 (S.D.N.Y. Sept. 30, 2004).......................................................51

**Statutes & Rules:**

7 U.S.C. § 25....................................................................................................................40

15 U.S.C. § 1125..............................................................................................................40

15 U.S.C. § 78j.................................................................................................................55

17 U.S.C. § 111................................................................................................................40

17 U.S.C. § 115................................................................................................................40

17 U.S.C. § 119................................................................................................................40

17 U.S.C. § 122.................................................................................................40

17 U.S.C. § 501.................................................................................................40

17 U.S.C. § 512.................................................................................................40

17 U.S.C. § 602.................................................................................................40

18 U.S.C. § 1962...............................................................................4, 6, 37, 44, 48

18 U.S.C. § 1964...............................................................................36, 38, 39, 43

39 U.S.C. § 3017...............................................................................................40

Fed. R. Civ. P. 8...............................................................................................37

Fed. R. Civ. P. 9(b) ..........................................................................................15, 51

Fed. R. Civ. P. 12(b)(6) .....................................................................................1

N.Y. Gen. Bus. Law § 352.................................................................................56

Restatement (Third) of Agency § 6.01 cmt. d(1) (2006) ..........................................20

## Other Authorities:

141 Cong. Rec. H2760 (daily ed. Mar. 7, 1995)......................................................40

Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 904(a), 84 Stat. 947
    (1970).........................................................................................................43

Testimony of Arthur Levitt, Chairman of the SEC, Before the H. Subcomm. on
    Telecommc'ns & Fin. Comm. of Commerce, 104th Cong. at 1 ( Feb. 10, 1995)
    Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 904(a), 84 Stat. 947
    (1970).........................................................................................................41

Plaintiffs Thomas H. Lee Equity Fund V, L.P.; Thomas H. Lee Parallel Fund V, L.P.; and Thomas H. Lee Equity (Cayman) Fund V, L.P. (collectively, the "THL Funds") respectfully submit this memorandum of law in opposition to the motions to dismiss the Amended Complaint ("Am. Compl."), pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by defendant Mayer, Brown, Rowe & Maw LLP ("Mayer Brown").[1]

## PRELIMINARY STATEMENT

Notwithstanding the detailed allegations of flagrant and protracted misconduct chronicled in the Amended Complaint, Mayer Brown argues that it has been sued for performing work that "was typical of legal work on routine corporate transactions" rendered every day by law firms across the United States. Br. at 37. Inveighing against the Amended Complaint, Mayer Brown claims that it was a mere scrivener and was "given the exact terms and structure of the transactions by Refco executives." Id. But the Amended Complaint's well-pleaded and particularized allegations, all of which must be accepted as true, shatter Mayer Brown's story line. The Amended Complaint, like the recent indictment of Mayer Brown senior partner Joseph Collins, explicitly alleges that Mayer Brown hurtled well past the divide between rendering legal services and actively participating in illegal conduct.

Starting in February 2000, Mayer Brown, along with former Refco CEO Phillip Bennett and others, was involved in devising, effectuating, and concealing, from prospective purchasers such as the THL Funds, and from others, a financial shell game to hide Refco's huge losses and related-party transactions, whose disclosure would have had disastrous consequences

---

[1] Mayer Brown International LLP filed a separate motion to dismiss the Amended Complaint, but it did not advance any arguments of its own and instead joined Mayer Brown's motion in full. As the Amended Complaint shows, the combined Mayer Brown partnerships should be treated as one firm for purposes of this action. See Am. Compl. ¶ 12 (a)-(f). Neither Mayer Brown partnership has argued otherwise in this motion.

on any effort to sell Refco. The shell game involved converting Refco's losses into uncollectible receivables owed to Refco by related parties (most notably, by Bennett's company RGHI), and then using transactions negotiated, coordinated, and documented by Mayer Brown to move these receivables off Refco's books for a very short time just before the end of every financial reporting period. This was achieved by Refco "lending" "funds" to a customer, the customer immediately lending the same funds to RGHI, and finally RGHI using the loaned funds to "eliminate" its debt to Refco. Then, just after the end of every financial reporting period, the transactions were unwound: Refco returned the funds to RGHI, RGHI paid off the customer loan, and the customer paid off the Refco loan, with the net result that the related-party receivables reappeared on Refco's books. Bennett stood on both sides of each transaction in this shell game, signing documents on behalf of both (a) RGHI that undertook to repay the "loan" and (b) Refco that indemnified the customer and guaranteed RGHI's repayment of the "loan." The customers bore no risk in these transactions, yet were paid "interest" for their participation. In fact, no money changed hands in most of the transactions except for the risk-free interest payments to the customers.

To effectuate the scheme, Bennett turned to Joseph Collins, a senior partner at Mayer Brown. Refco was Collins's key client and a large client for Mayer Brown. As the Amended Complaint pleads with particularity, Mayer Brown helped effectuate each step of 17 of the sham transactions described above between 2000 and 2005. Mayer Brown's bald assertions to the contrary notwithstanding, these sham transactions — which had no valid business purpose, were timed to straddle Refco's financial reporting periods, and doled out risk-free returns to the Refco customers willing to participate in the shell game — bore no resemblance to "routine transactions," and Mayer Brown's pivotal role in drafting and negotiating the sham transactions

was by no means "typical of legal work on routine corporate transactions." Br. at 37.

But the Amended Complaint alleges much more. Members of the same team at Mayer Brown — led by senior partner Collins — responsible for helping Bennett and others effectuate their scheme were also in charge of responding to the THL Funds' due diligence requests in connection with their 2004 purchase of a majority interest in Refco (the "2004 Purchase"), and negotiating that transaction. In these roles, Mayer Brown actively participated in concealing the existence of the scheme and in defrauding the THL Funds.

In responding to the THL Funds' due diligence requests and in negotiating the 2004 Purchase, Mayer Brown hid the existence of the scheme by repeatedly and materially lying to the THL Funds and their representatives. The sham transactions in which Mayer Brown played such a key role were related-party transactions. Eliminating related-party transactions — as Collins and Mayer Brown well knew — was so important to the THL Funds that they insisted on that elimination before closing on the 2004 Purchase. Yet Collins and his Mayer Brown colleagues repeatedly, and with knowledge that they were speaking falsely, assured the THL Funds there were no such transactions — while simultaneously playing a key role in effecting those transactions. For example, literally the day after Mayer Brown's Paul Koury helped effect the second largest sham loan transaction — for $700 million — which involved a related-party transaction between Refco and RGHI, Koury sent the THL Funds a draft disclosure schedule representing that no such related-party transaction existed, and during the period that the sham loan remained in place, Koury prepared and sent several more disclosure schedules with the same denial, a denial Mayer Brown knew by its very own conduct was false.

Nor did Mayer Brown stop with lies and misstatements. The Amended Complaint also alleges that Mayer Brown was asked during the due diligence process to produce

to the THL Funds a limited liability corporation ("LLC") agreement. 

Based on the foregoing, the Amended Complaint pleads claims for violations of

Rules 10b-5(a), (b), and (c). Alternatively, if the Court concludes that the THL Funds may not

pursue federal securities fraud claims (because, for example, the Refco equity interests that the

THL Funds purchased are not securities, which is an issue that cannot be decided at this stage of

the case), the Amended Complaint pleads that Mayer Brown violated RICO's conspiracy

provision (18 U.S.C. § 1962(d)) by conspiring with Bennett and others to conduct a RICO

enterprise (in violation of 18 U.S.C. § 1962(c)). In either event, the Amended Complaint also

pleads two separate claims under state law.

In its motion to dismiss, Mayer Brown advances a series of meritless arguments

and often resorts to rewriting the Amended Complaint in an effort to conjure up a basis for

dismissal when none exists:

- The Amended Complaint's 10b-5(b) claim is not barred by Lattanzio v. Deloitte & Touche L.L.P., 476 F.3d 147 (2d Cir. 2007); Wright v. Ernst & Young, L.L.P., 152 F.3d 169 (2d Cir. 1998); and Shapiro v. Cantor, 123 F.3d 717 (2d Cir. 1997). In those cases, investors sought to hold accountants liable for issuers' false financial statements, arguing that the falsehoods should be attributed to the accountants. Here, Mayer Brown is being called to account for its own misstatements and omissions — no one else's. (See pages 8 to 9 below.)

- Mayer Brown cannot escape liability by arguing that Collins was a "mere conduit," who based his statements on information from Refco or Bennett. Mayer Brown made its own misstatements and omissions. Furthermore, Mayer Brown's position reduces to the argument that it

could lie with impunity so long as it disclaimed being the originator of the lie. Having chosen to speak, Mayer Brown was obligated to speak truthfully and completely. (See pages 10 to 7, below.)

- The Amended Complaint does not attempt to impose on Mayer Brown a duty to correct its clients' misstatements. Again, Mayer Brown is being called to account for its own misstatements and omissions — no one else's. (See pages 6 to 9, below.)

- The Amended Complaint clearly pleads that the THL Funds relied on Mayer Brown to their detriment. Mayer Brown cannot invoke provisions of the 2004 Purchase Agreement (such as its integration clause) to protect itself because Mayer Brown was not a party to that Agreement and has otherwise disavowed the representations and warranties in the Agreement. (See pages 18 to 24, below.)

- The Amended Complaint's scheme claims, for violations of Rules 10b-5(a) and (c), are not barred by Stoneridge Investment Partners, LLC v. Scientific Atlanta, Inc., 128 S. Ct. 761(2008). Unlike in Stoneridge, the THL Funds here are not invoking a "fraud on the market" presumption of reliance. They dealt directly with Mayer Brown, relied directly on Mayer Brown's words and deeds, and were directly harmed by the scheme in which Mayer Brown and other engaged. (See pages 31 to 36, below.)

- The Amended Complaint more than adequately pleads scienter and overflows with facts showing that Mayer Brown consciously or recklessly lied to the THL Funds. This Court has already concluded that for someone aware of the sham transactions — as Mayer Brown indisputably was — those transactions are "glaringly suggestive of fraud." (See pages 24 to 31, below.)

- The PSLRA's RICO amendment does not bar the THL Funds' RICO claim, which is pleaded in the alternative. Mayer Brown has the burden, which it has not met, of showing that the interests the THL Funds acquired are securities. In any event, if the Court concludes that the securities fraud claims against Mayer Brown cannot proceed, then the RICO claim should. (See pages 36 to 44, below.)

- The Amended Complaint has properly pleaded a conspiracy under 18 U.S.C. § 1962(d). Mayer Brown did not merely perform routine legal services for the RICO enterprise – the Amended Complaint alleges that Mayer Brown lied, deceived, and created counterfeit documents to further the RICO enterprise, thereby evidencing its joinder in, and commitment to, a RICO conspiracy. (See pages 44 to 48, below.)

- The Amended Complaint pleads a predicate violation of 18 U.S.C.

§ 1962(c) and pleads with particularity the predicate acts outside the negotiation period of the Purchase Agreement. The Amended Complaint adequately pleads a pattern of racketeering activity with both open-ended and closed-ended continuity. (See pages 48 to 52, below.)

Mayer Brown's motions to dismiss should be denied in their entirety.

## ARGUMENT

**I.    THE AMENDED COMPLAINT STATES A SECURITIES FRAUD CLAIM**

### A.    Mayer Brown Is Liable as a Primary Violator of Rule 10b-5(b) for its Material Misstatements and Omissions to the THL Funds

Mayer Brown spills much ink arguing that the Amended Complaint impermissibly attempts to hold it liable under Rule 10b-5(b) for its clients' alleged fraud. Br. at 9-18. But that is not the THL Funds' Rule 10b-5(b) claim. Rather, the THL Funds are suing Mayer Brown for Mayer Brown's own fraudulent conduct. The Amended Complaint alleges that Mayer Brown made a number of knowingly false statements directly to the THL Funds and their counsel, such as informing the THL Funds that "other than Bennett's compensation arrangements, no other undisclosed contracts or arrangements existed between Refco and Bennett, RGHI or other affiliates." Am. Compl. ¶ 53.[2] This was a lie because there were numerous related-party contracts and arrangements (including 17 sham round-trip loans) – in

---

[2] See also Am. Compl. ¶ 55 (Collins stated in an e-mail that "'[w]e were advised by Refco Management that all material contracts were either in the Data Room or are being produced in response to the requests in Exhibit C to the Letter of Intent.'"); id. ¶ 56 (Collins represented to WGM in a memorandum that "'[w]e have been advised by Refco that there are no significant indemnification obligations which have not been disclosed already.'"). Collins knew full well that both of these statements were false because he knew that "not one of the documents relating to the sham round-trip loan transactions was included in the data room, produced in response to the Letter of Intent, or otherwise disclosed to the THL Funds," and "each sham round-trip loan transaction contained indemnification obligations on the part of Refco, but none of these transactions had been disclosed to the THL Funds or their representatives." Id. ¶ 55 & ¶ 56. And he knew these facts not because his client told him these facts in confidence, but because of the work he and his firm did. The Amended Complaint further alleges that Collins confirmed to WGM that all Refco's receivables listed on its balance sheet were "'from customers in ordinary course,'" which in light of the sham round-trip loans was clearly false. Id. ¶ 54. Mayer Brown's other knowingly false statements are described on pages 7, 7 n.3, and 15-17, below.

which Mayer Brown played a material role – that were never disclosed to the THL Funds or their counsel. See, e.g., id. ¶¶ 53-55, 71-75.

The Amended Complaint further alleges that Mayer Brown created and then sent a false document to the THL Funds' attorneys. During due diligence, WGM saw in the data room an unexecuted copy of a Refco Group LLC Agreement that referenced an unknown entity – DF Capital – and an unknown agreement – a Proceeds Participation Agreement. Id. ¶ 61.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████ But after WGM asked for a copy of the operative LLC Agreement, Collins created a counterfeit Fourth LLC Agreement, and provided this counterfeit to WGM, representing it to be the real agreement. ███

██████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████[3]

---

[3] The Amended Complaint also alleges that Mayer Brown drafted and delivered to the THL Funds and their counsel disclosure schedules and other written statements confirming there were no related-party transactions. In fact, when Mayer Brown communicated the initial disclosure schedules to the THL Funds' counsel, it expressly represented that it was delivering "'our initial draft of the Schedules,'" which

Thus, the THL Funds are not seeking to hold Mayer Brown liable under Rule 10b-5(b) for the false statements or actions of others that are merely attributed to Mayer Brown, but for Mayer Brown's material lies and active participation in the scheme. Mayer Brown's conduct falls squarely within the reach of primary Rule 10b-5 liability for attorneys articulated in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994) (emphasis added):

> The absence of § 10(b) aiding and abetting liability does not mean that secondary actors in the securities markets are always free from liability under the securities Acts. Any person or entity, including a lawyer, . . . who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5 . . . .

These allegations also render inapposite Mayer Brown's heavy reliance (Br. at 10-16) on Lattanzio v. Deloitte & Touche L.L.P., 476 F.3d 147 (2d Cir. 2007); Wright v. Ernst & Young, L.L.P., 152 F.3d 169 (2d Cir. 1998); and Shapiro v. Cantor, 123 F.3d 717 (2d Cir. 1997). In these cases, investors sought to hold accountants — that had performed reviews, not audits, and that therefore had not issued any certified opinions or otherwise made any statements to investors to which liability could attach — liable for falsehoods communicated to investors by companies in their financial statements, under the theory that the falsehoods, though spoken by the companies, should be attributed to their accountants. The THL Funds do not seek to hold Mayer Brown liable for someone else's words attributed to Mayer Brown, but to hold Mayer Brown liable for its own words and conduct – i.e., for false representations Mayer Brown made directly to the THL Funds and their counsel while contemporaneously engaging in transactions that belied those very representations. See Am. Compl., e.g., ¶¶ 32(l), 52-56 (pages 6 to 7

---

Mayer Brown was also "'deliver[ing] simultaneously to our client.'" Id. ¶ 74(a) (emphasis added). See also id. ¶¶ 70-75. These written statements were lies because they misrepresented that there were no related-party contracts or arrangements, and they were Mayer Brown's lies.

above).  The three cases above all recognize that a professional can be held liable for its own false statements, see Lattanzio, 476 F.3d at 156; Wright, 152 F.3d at 175; Shapiro, 123 F.3d at 720, an indisputable proposition confirmed once again in the Second Circuit's most recent accountant liability case, Overton v. Todman & Co., CPAs, P.C., 478 F.3d 479 (2d Cir. 2007), which Mayer Brown conspicuously fails to mention.  The Overton court held that imposing primary Section 10(b) and Rule 10b-5 liability on an accountant for not correcting a false or misleading statement in a certified opinion "remain[s] true to the prohibition on aiding and abetting liability because we require that an accountant make its own misleading omission by failing to correct its certified opinion."  Id. at 487 (emphasis in original).

      Equally unavailing is Mayer Brown's effort to argue that imposing liability on it would be tantamount to imposing a duty to correct false statements by its client, or to disclose accurate facts when its client has made false statements.  Liability should be imposed on Mayer Brown under Rule 10b-5(b) for false statements that Mayer Brown made.  The principle of law here is clear:  Mayer Brown may not have been obligated to say anything to the THL Funds, even in the face of false statements by its client, but "upon choosing to speak, [it] must speak truthfully about material issues."  Caiola v. Citibank, N.A., 295 F.3d 312, 331 (2d Cir. 2002) (citing Rubin v. Schottenstein, Zox & Dunn, 143 F.3d 263, 267-68 (6th Cir. 1998), and Ackerman v. Schwartz, 947 F.2d 841, 848 (7th Cir. 1991), both of which held securities issuer's counsel liable to investors because, having decided to communicate with investors, they failed to communicate the true facts that they knew).[4]  A license to practice law is not a license to lie.  See Rubin, 143 F.3d at 268; Ackerman, 947 F.2d at 848.

---

[4] See also Gas Natural v. E.ON AG, 468 F. Supp. 2d 595, 613 (S.D.N.Y. 2006) ("In the context of Section 10(b) . . . courts have long imposed the obligation to speak truthfully about material issues once one has chosen to speak.") (citations omitted).

**B.    Mayer Brown's "Mere Conduit" Defense Is Meritless**

Mayer Brown's next argument is that it cannot be liable under Rule 10b-5(b) because Mayer Brown senior partner Collins was clever enough at times to say that he was basing his false statements on information given to him by Refco or Bennett.  Br. at 13-14.  In short, Mayer Brown argues that it can make statements to others that it knows are materially false, in connection with the purchase or sale of a security, as long as it disclaims being the originator of the falsehoods.

As a dispositive threshold matter, this argument flies in the face of the Amended Complaint's factual allegations, which are presumed true on this motion.  Specifically, Amended Complaint ¶ 42 alleges, "During the due diligence process, Mayer Brown and Collins understood that they would be providing information to the THL Funds upon which the THL Funds would rely in deciding whether to proceed with the 2004 Purchase.  In this capacity, Mayer Brown would not be serving merely as a conduit for information from Refco management and Bennett, but would be drawing on its own extensive knowledge and information built up over the many years that Collins and his Mayer Brown colleagues had been working with Refco."

Furthermore, and not surprisingly, courts have had little trouble rejecting this "mere conduit" defense.  Squarely on point is the Third Circuit's decision in <u>Kline</u> v. <u>First Western Gov't Sec., Inc.</u>, 24 F.3d 480 (3d Cir. 1994), another case that Mayer Brown ignores.[5]  In <u>Kline</u>, the defendant law firm issued opinion letters in connection with transactions marketed by its client, First Western Government Securities ("First Western").  <u>Id.</u> at 481-82.  The firm

---

[5] The Second Circuit and courts in this District have cited <u>Kline</u> with approval.  <u>See, e.g.</u>, <u>Hunt</u> v. <u>Alliance N. Am. Gov't Income Trust, Inc.</u>, 159 F.3d 723, 729-29 (2d Cir. 1998) (citing <u>Kline</u> for the proposition that cautionary language must relate directly to the statement by which the plaintiffs claim to have been misled for the "bespeaks caution" doctrine to apply); <u>Resolution Trust Corp.</u> v. <u>Latham & Watkins</u>, 909 F. Supp. 923, 934 (S.D.N.Y. 1995) (finding that a duty to disclose material information arises when a law firm renders an opinion on behalf of a client, and stating that "a law firm has the duty not to mislead").

expressly based its opinions on an assumed set of facts provided to it by First Western and expressly stated that its opinion letters were "intended solely for the internal use of First Western and, accordingly, it is not intended to be, and should not be, relied upon by any person other than First Western." Id. at 483. After the transactions failed, investors sued the law firm, alleging it knew First Western was distributing its opinion letters to investors and knew the letters' factual descriptions were inaccurate. Id. at 483-84.

The Third Circuit affirmed the district court's denial of the law firm's summary judgment motion, holding that "attorneys may be liable for both misrepresentations and omissions where the result of either is to render an opinion letter materially inaccurate or incomplete." Id. at 485-86. In so holding, the court rejected the law firm's argument that "as a matter of law it cannot be held liable for an opinion letter in which it made explicit that it was basing its opinion on an assumed set of facts represented to it by its client and that it had conducted no independent investigation into whether those represented facts accurately reflected reality." Id. at 486. According to the Third Circuit, "when a law firm knows or has good reason to know that the factual description of a transaction provided by another is materially different from the actual transaction, it cannot escape liability simply by including in an opinion letter a statement that its opinion is based on provided facts." Id. at 487.[6] This rebuts Mayer Brown's argument, for which it draws inexplicable support from the inapposite accountant attribution cases, that it cannot be held liable because when Collins lied, he assiduously avoided "articulating" an "endorsement" of what Bennett or Refco said. Br. at 13-14. In any event, when a firm such as Mayer Brown sends out disclosure schedules as "our initial draft" and

---

[6] See also Kline, 24 F.3d at 489 ("[the law firm's] statement that its opinion was based on facts represented to it by First Western also contained the implicit assertion that [the law firm] did not know the facts to be otherwise. It could not therefore have alerted [the securities purchasers] to the possibility that [the law firm] did know otherwise").

before client review (Am. Compl. ¶ 74(a)), the schedules are more than an endorsement, they are the firm's own statements. This is also true when a firm represents that a counterfeit agreement it drafted is the real one. Id. ¶ 64.

Kline accords with a plethora of federal cases holding that attorneys are not shielded from Rule 10b-5(b) liability when they knowingly lie to investors (either orally or in writing), even though they also state that the lies originated with someone else.[7] Among the cases reinforcing Kline are:

- Rubin v. Schottenstein, Zox & Dunn, 143 F.3d 263, 266, 268 (6th Cir. 1998) (when issuer's attorney had "various meetings and telephone conversations" with investors during which attorney gave false and misleading oral assurances regarding the financial condition of his client's business, the attorney may be held primarily liable because, inter alia, the attorney failed to provide "complete and nonmisleading information with respect to subjects on which he under[took] to speak," in violation of Rule 10b-5);

- Ackerman v. Schwartz, 947 F.2d 841, 843, 848 (7th Cir. 1991) (attorney can be liable under Rule 10b-5 for misleading opinion letter, despite attorney's statements that he "relied on unnamed persons for unspecified facts" and did "'not [make] an attempt to independently verify the various representations'"; once an attorney has chosen to speak, Rule 10b-5 requires him to "tell the truth about material issues"; "Under Rule 10b-5 . . . the lack of an independent duty does not excuse a material lie.")[8];

- Divine Tower Int'l Corp. v. Kegler, Brown, Hill & Ritter Co., 2007 WL 2572258, at *18-19 (S.D. Ohio Sept. 4, 2007) (when lawyers for sellers of securities "met directly with [the purchaser of the securities] to discuss outstanding due diligence issues" and subsequently "drafted the Purchase Agreement, knowing that it contained material misrepresentations and

---

[7] Nothing in Kline can be read to restrict its reasoning to opinion letters. The Court stated that "'[a]n opinion or projection, like any other representation, will be deemed untrue for purposes of the federal securities laws if it is issued without reasonable genuine belief or if it has no basis." 24 F.3d at 486 (emphasis added) (citations omitted). Moreover, a rule permitting an issuer's counsel to lie to investors so long as it avoids doing so in the formal vehicle of an opinion letter would simply "place a premium on concealment and subterfuge rather than on compliance with the federal securities law." In re Global Crossing, Ltd. Sec. Litig., 322 F. Supp. 2d 319, 333 (S.D.N.Y. 2004) (internal quotation marks and citation omitted).

[8] The Second Circuit cited Rubin and Ackerman with approval in Caiola, 295 F.3d at 331.