before 2000, the Refco Operators devised a scheme to defraud multiple parties, including potential purchasers of Refco, and in furtherance of that overall fraudulent scheme committed numerous predicate acts of mail and wire fraud up and until October 2005, when their scheme was discovered and brought down Refco. Am. Compl. ¶¶ 83-85 & 107.[55]

In addition, contrary to Mayer Brown's assertions, the Amended Complaint sets forth sufficient detail with respect to predicate acts outside the period in which the 2004 Purchase was negotiated.[56] Mayer Brown does not assert that the Amended Complaint fails to plead a fraud with particularity, identify the participants in that fraud, or furnish concrete details on when the fraud took place, where it occurred, or how it was effectuated. Instead, Mayer Brown argues that the THL Funds' RICO claim should be dismissed and repleaded because it does not identify by name the recipients, other than the THL Funds, of Refco's false statements.

---

mailings and wire transfers further an underlying scheme that itself has a fraudulent, deceptive purpose") (citation and internal quotation marks omitted); M'Baye v. N.J. Sports Prod., Inc., 2007 WL 431881, at *7 (S.D.N.Y. Feb. 7, 2007) (when "the plaintiff claims that the mail or wire fraud was only used in furtherance of a scheme to defraud, then the complaint does not have to be as specific with respect to each allegation of mail or wire fraud, so long as the RICO scheme is sufficiently pled to give notice to the defendants").

[55] In any event, "closed-ended continuity" is not, as Mayer Brown argues (Br. at 56), solely a temporal concept: "other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir. 2004) (citation and internal quotation marks omitted); see Zito v. Leasecomm Corp., 2003 WL 22251352, at *16 (S.D.N.Y. Sept. 30, 2003) (holding that, although the Second Circuit has not yet found closed-ended continuity in a pattern lasting less than two years, "statistics do not make binding law" and rejecting a "pleading requirement involving a minimum duration of two years" because "duration is but one of several factor to be considered in determining whether a pattern of racketeering activity has the requisite continuity"). Those other factors are present here: the THL Funds allege numerous predicate acts involving multiple conspirators spanning a more than seven-year period with a diverse range of victims. See Am. Compl. ¶ 107; Bennett Plea Colloquy at 17 (the Refco Operators "concealed the receivable from, amongst others, Refco's auditors, Thomas H. Lee partners, various lenders who, in 2004, participated in Refco's senior secured credit facility, and the issuance of 9 percent senior subordinated notes, . . . investors in Refco's common stock" and "HSBC Bank"). This case thus involves the very type of "long-term criminal conduct" that RICO is intended to reach. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 242 (1989).

[56] The Amended Complaint also alleges (¶ 106) acts of money laundering outside the period leading up to the 2004 Purchase, which, as Mayer Brown concedes, "are not subject to Rule 9(b)." Br. at 55 n.39.

But the case law does not require the THL Funds, at this stage, to do so. See Zito v. Leasecomm Corp., 2004 WL 2211650, at *12 (S.D.N.Y. Sept. 30, 2004) (complaint "need not specify the time, place and content of each mail communication where the nature and mechanics of the underlying scheme is sufficiently detailed") (citation omitted). Here, the Amended Complaint sets forth the "mechanics of the underlying scheme" in great detail. See, e.g., Am. Compl. ¶¶ 22, 32, 107(c). Given Mayer Brown's long relationship with Refco, it certainly has the greater knowledge of other parties that received false financial statements before the THL Funds negotiations with Refco.[57] If this is an issue at all, it is an issue for discovery, not for pleading.[58]

Mayer Brown is also incorrect in arguing that the fraud was "'inherently terminable'" and that the THL Funds thus have not pleaded "'open-ended continuity.'" Br. at 56-57 (citations omitted). Open-ended continuity is established by showing "that the predicate acts were the regular way of operating [a legitimate] business," DeFalco v. Bernas, 244 F.3d 286, 323 (2d Cir. 2001) (citation and internal quotation marks omitted); the Amended Complaint alleges precisely that. See Compl. ¶ 107(c). Moreover, the fraud against the THL Funds was but one (albeit a substantial) part of a complicated, multifaceted effort to defraud numerous parties – including regulators, lenders, and investors. See Am. Compl. ¶¶ 79 n.15, 106(a) n.16, 107(e);

---

[57] See Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 2001 WL 282687, at *3 (S.D.N.Y. Mar. 22, 2001) (RICO claims satisfied Rule 9(b) because "the Complaint in this case alleges over two-hundred fraudulent transactions spread over a two year period, establishes a pattern of the fraud by way of nine specific examples . . ., and alleges the participation of each member in the scheme. The use of mail, wire other instrumentalities of interstate commerce is also alleged and is otherwise self-evident from the face of the Complaint. Rule 9(b) requires no more of Sterling at this stage of the litigation"); see also In re Crude Oil Commodity Litig., 2007 WL 1946553, at *7 (S.D.N.Y. June 28, 2007) ("An exception to the strict dictates of Rule 9(b) exists where allegations are based on information and belief when facts are peculiarly within the opposing party's knowledge.") (citation and internal quotation marks omitted).

[58] Mayer Brown's brief makes clear that no level of specificity would satisfy it. For example, Mayer Brown argues that "[n]owhere does the Amended Complaint explain how the [round-trip] loans created unfair business terms for Refco" (Br. at 56 n. 40) even though the loans lacked economic substance, Refco bore all of the risk (through guarantees and indemnifications), and other parties to the transactions received risk free "interest" payments. See Am. Compl. ¶¶ 24, 26, 28-29.

Bennett Plea Colloquy at 17. The criminal enterprise thus did not end with the 2004 Purchase, see Am. Compl. ¶¶ 44, 81, 82, 107(d), making clear that the scheme was not "inherently terminable" and supporting the inference that fraud would have continued into the future. See DeFalco, 244 F.3d at 324 (evidence that defendants "had no intention of stopping once they met some immediate goal" and thus that "the scheme was not 'inherently terminable'"); Sterling Interiors Groups, Inc. v. Haworth, Inc., 1996 WL 426379, at *13 (S.D.N.Y. July 30, 1996) ("[a] threat of continuity 'may be inferred from all of the surrounding circumstances'") (citations omitted). Indeed, the repeated nature of the fraudulent conduct alleged, standing alone, supports an inference of continuity. See United States v. Aulicino, 44 F.3d 1102, 1114 (2d Cir. 1995).[59]

### III. THE THL FUNDS HAVE STATED CLAIMS FOR COMMON-LAW FRAUD AND NEGLIGENT MISREPRESENTATION

#### A. Massachusetts Law Presumptively Governs the THL Funds' Common-Law Claims

Based on a number of factual allegations not contained in the Amended Complaint (Br. at 57 n.42),[60] Mayer Brown contends that New York law governs the THL Funds' state law claims. But Mayer Brown does not, and cannot, contest that the Amended Complaint adequately pleads that the loss suffered by the THL Funds occurred not in New York, but in Massachusetts. Under New York's choice-of-law principles, therefore, the law governing the THL Funds' claims is at least presumptively the law of Massachusetts, even if many of Mayer Brown's actions leading to this injury originated in New York or elsewhere. As the Court

---

[59] In light of these allegations, Bennett's claim during his guilty plea colloquy that he "ultimately [did] pay off the receivable balance" (Br. at 57 n.41) does not foreclose open-ended continuity. Bennett did not do so until after the fraud was discovered; absent its detection, there was no defined end to the conspiracy, which continued even after the 2004 Purchase.

[60] For example, Mayer Brown states that "Collins had an office in New York" but does not disclose that Collins also had his primary office at Mayer Brown's Chicago headquarters. Mayer Brown also notes that WGM is headquartered in New York without disclosing that many of the WGM lawyers with whom it dealt were from offices outside New York, including from Boston, where the THL Funds were located.

held in Dutton v. Glass, 2005 WL 146503, at *2 (S.D.N.Y. Jan. 20, 2005):

> "Clearly a cause of action for fraud does not arise until loss is suffered; . . . [and therefore] the cause of action accrues where the loss is suffered." Sack v. V.T. Low, 478 F.2d 360, 366 (2d Cir. 1973); see also Hidden Brook [Air, Inc. v. Thabet Aviation Int'l Inc.], 241 F. Supp. 2d [246,] 277 [(S.D.N.Y. 2002)]. Even if the fraud occurred in New York, where the action is purely economic, it is governed by the law where plaintiffs suffered their injury which generally is the place where plaintiffs resided and sustained the economic impact of their loss. Cantor Fitzgerald [Inc. v. Lutnick], 313 F.3d [704,] 710 [(2d Cir. 2002)]; Krock v. Lipsay, 97 F.3d 640, 646 (2d Cir. 1996) (and cases cited therein); Smith v. Soros, 2003 WL 22097990, at *4 (S.D.N.Y. Sept. 5, 2003), aff'd, 2004 WL 2378815 (2d Cir. Oct. 25, 2004); Gordon & Co. [v. Ross], 63 F.Supp.2d [405,] 408 [(S.D.N.Y. 1999)]; Global [Fin. Corp. v. Triarc Corp.], 693 N.Y.S.2d [479,] 482 [(1999)]. [61]

This presumption was applied very recently in BT Triple Crown Merger Co., Inc. v. Citigroup Global Market Inc., Index No. 600899/08, slip op. at 9 (NY S. Ct. May 7, 2008) (Goodchild Decl. Ex. C), in which the Court held, specifically speaking of the THL Funds:

> Plaintiffs correctly point out that "under New York conflict of law principles, fraud claims are governed by the law of the place of injury," which is usually deemed to be the place "where [the] plaintiffs are located." J.A.O. Acq. Corp. v. Stavitsky, 192 Misc.2d 7, 12 (Supp. Ct. N.Y. Co. 2001), aff'd 293 A.D.2d 323 (1st Dept. 2002). Since the plaintiffs' businesses operate from Boston, their alleged injury occurred there and the substantive law of Massachusetts applies to their fraud claim.

This presumption "is not chiseled in stone"; it can be overcome by other "state

---

[61] See also Smith Barney, Harris Upham & Co. v. Luckie, 85 N.Y.2d 193, 207 (1995) ("a securities fraud claim arising outside this State is subject to the limitations periods of the jurisdictions where the injury occurred—generally, the place where the investors resided and sustained the economic impact of the loss"); Proforma Partners, LP v. Skadden Arps Slate Meagher & Flom, LLP, 720 N.Y.S.2d 139, 139 (N.Y. App. Div. 2001) (stating that a tort cause of action generally accrues in the place of injury and "when an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss") (citation and alteration omitted). All the cases that Mayer Brown cites (Br. at 57 n.42) recognize the above-stated presumption. See LaSala v. Bank of Cyprus Pub. Co., 510 F. Supp. 2d 246, 264 (S.D.N.Y. 2007); Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 193 (S.D.N.Y. 2006); HSA Residential Mortgage Servs. of Tex. v. Casuccio, 350 F. Supp. 2d 352, 365 (E.D.N.Y. 2003); Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 492 (S.D.N.Y. 2001). Except for HSA, Mayer Brown's cases are otherwise inapposite because they address the presumption in the context of whether to apply the law of a United States jurisdiction or the law of a foreign country. That context implicates a variety of interests not at issue here (such as international comity, ascertainability of foreign law, and foreseeability of a foreign country's law applying to a transaction within the United States).

interests" of sufficient magnitude when those interests are "at war" with the presumption. Simon v. Philip Morris Inc., 124 F. Supp. 2d 46, 58 (E.D.N.Y. 2000). But Mayer Brown has failed to offer any sufficiently weighty countervailing "state interest" to negate the presumption at this stage in the litigation. It argues that New York has a "strong interest in defining the scope of liability for professionals who work in the state" (Br. at 57 n.42), but the Amended Complaint nowhere alleges that all of the professional work at issue occurred within New York (because it did not).[62] Moreover, Massachusetts's interest in protecting its residents from investment fraud is at least as great as New York's interest in defining the scope of liability for professionals, especially where (as here) the charged fraud stems from representations targeted to those Massachusetts residents, see Am. Compl. ¶¶ 52-67, and received and relied upon by those residents in Massachusetts, see Am. Compl. ¶ 10.

Because the loss suffered by the THL Funds was in Massachusetts, Massachusetts law presumptively applies to the THL Funds' common law claims. Alternatively, to the extent the Court believes that further development of the factual record is required to determine the governing state law for this case, the appropriate response is for the Court simply to deny Mayer Brown's motion to dismiss to permit such development. See Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC, 376 F. Supp. 2d 385, 410 (S.D.N.Y. 2005); Steed Fin. LDC v. Nomura Sec.

---

[62] Mayer Brown references the Purchase Agreement's choice-of-law provision as a factor to be considered in deciding which state's laws applies to the THL Funds' claims (Br. at 57 n.42). Because the language of that provision only addresses the law governing the Purchase Agreement, "there is no way such language can be read broadly enough to apply to fraudulent misrepresentation" or negligent misrepresentation claims. Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996); compare id. (holding that choice-of-law provision stating mortgage "'shall be governed by and construed in accordance with the laws of . . . Massachusetts'" was not broad enough to encompass tort claims), with Purchase Agreement § 9.3 ("This Agreement shall be governed by and construed in accordance with the laws of the State of New York . . . .").

Int'l, Inc., 2001 WL 1111508, at *11 (S.D.N.Y. Sept. 20, 2001).[63] In any event, Mayer Brown's attacks on the state law claims fail under both the controlling law of Massachusetts and Mayer Brown's preferred law of New York.

### B. The THL Funds Have Stated a Claim for Common-Law Fraud

Mayer Brown contends (Br. at 60) that the THL Funds' common-law fraud claim should be dismissed for the same reasons that require dismissal of their federal securities law claims. Aside from the fact that the PSLRA's heightened pleading requirements do not apply to the THL Funds' state law claims, Mayer Brown's motion to dismiss the common-law fraud claim fail under either Massachusetts or New York law for the same reasons that Mayer Brown's motion to dismiss the federal securities claims fails.[64] Furthermore, most of Mayer Brown's attacks on the THL Funds' Section 10(b) claims simply do not address the broader scope of the THL Funds' state law fraud claim. Mayer Brown's Section 10(b) arguments do not, for instance, grapple with the fact that the state law fraud claim is neither limited to Mayer Brown's deceptive actions "in connection with the purchase or sale of [a] security," 15 U.S.C. §78j(b), nor limited to the actions of Mayer Brown, but encompasses the fraudulent conduct of all the actors with

---

[63] See also, e.g., Gaetano Assocs. Ltd. v. Artee Collections, Inc., 2006 WL 330322, at *4 (S.D.N.Y. Feb. 14, 2006) (denying motion to dismiss state law claims when "insufficient information [existed] to make a choice-of-law determination," noting "issues raised regarding state common law claims" could be addressed "when a more complete record can be presented to allow a reliable choice-of-law determination to be made"); Rudin v. Dow Jones & Co., 510 F. Supp. 210, 217 (S.D.N.Y. 1981) (denying motion to dismiss libel action premised on defense under California law when significant New York contacts also existed, and finding that choice of law "issues cannot be sufficiently considered on a motion to dismiss addressed to the face of the complaint"); Gen. Accident Ins. Co. v. Fidelity & Deposit Co., 598 F. Supp. 1223, 1230 (E.D. Pa. 1984) ("Because, when faced with a motion to dismiss, I must resolve all doubts in favor of the non-moving party, unless it is clear that [plaintiff's] allegations could not state a valid claim under the laws of any of the potentially interested states, I cannot grant a motion to dismiss with regard to that claim" when the Court had not been presented with sufficient information to assess which states have a significant relationship to the dispute).

[64] Massachusetts and New York law on fraud are similar, but not identical. See Levin v. Dalva Bros., 459 F.3d 68, 73-74 (1st Cir. 2006); Krock, 97 F.3d at 646. Mayer Brown, however, has not raised any challenge to the THL Funds' fraud claim that implicates any difference between Massachusetts and New York fraud law at the pleading stage.

whom Mayer Brown conspired (including Bennett, Trosten and Maggio, among others).[65]

### C. The THL Funds' Negligent Misrepresentation Claim Is Not Barred by New York's Martin Act

Mayer Brown argues that the THL Funds' negligent misrepresentation claim should be dismissed because it is preempted by New York's "blue sky law," the Martin Act (N.Y. Gen. Bus. Law § 352, et seq.). Because the governing law for this claim is presumptively Massachusetts law, New York's Martin Act is inapplicable.[66] Additionally, if the Court is uncertain as to the correct law to apply to the THL Funds' negligent misrepresentation claim, the proper course still is for the Court to deny Mayer Brown's motion to dismiss so the parties can develop a more complete factual record upon which the Court can resolve the choice-of-law question. See Fraternity Fund, 376 F. Supp. 2d at 410; Steed Fin. LDC, 2001 WL 1111508, at *11.[67]

Even if New York law applies, the Martin Act does not necessarily preempt the THL Funds' negligent misrepresentation claim. As Mayer Brown recognizes, a New York federal and New York state court have held that the Martin Act does not preempt negligent

---

[65] Both Massachusetts and New York law recognizes that a defendant is liable for the tortious conduct of others with whom it acts in concert. See Aetna Cas. & Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994) (Massachusetts law); Kurker v. Hill, 689 N.E.2d 833, 837 (Mass. App. Ct. 1998) (Massachusetts law); Am. Preferred Prescription, Inc. v. Health Mgmt., Inc., 252 A.D.2d 414, 416 (N.Y. App. Div. 1998) (New York law); Williams v. Sidley Austin Brown & Wood, LLP, 824 N.Y.S.2d 759 (N.Y. Sup. Ct. 2006) (New York law). As explained already, the Amended Complaint clearly alleges a conspiracy here. See pages 45 to 49, above.

[66] Massachusetts' "blue sky law" does not bar a private plaintiff from pursuing a misrepresentation claim against the seller of a security. See e.g., Marram v. Kobrick Offshore Fund, Ltd., 809 N.E.2d 1017, 1031 (Mass. 2004); Harbourvest Int'l Private Equity Partners II – Direct Fund, LP v. Axent Techs., Inc., 2000 WL 1466096, at *1 (Mass. Super. Aug. 31, 2000).

[67] Deferring the choice-of-law question and Mayer Brown's Martin Act defense if the Court has any doubt over whether Massachusetts law controls here is particularly warranted for two additional reasons. First, if the Court concludes that the equity interests in Refco that the THL Funds acquired are not securities, see Am. Compl. ¶ 4 n.5, Mayer Brown's Martin Act defense would no longer exist regardless of which state's law governs the THL Funds' common law claims. Second, deferring the choice-of-law question does not work any prejudice on Mayer Brown because a negligent misrepresentation claim does not impose any additional discovery obligations beyond the THL Funds' other claims.

misrepresentation claims.[68] Mayer Brown contends that these cases "cannot be reconciled" with Castellano v. Young & Rubicam, Inc., 257 F.3d 171 (2d Cir. 2001) (Br. at 58 n.43), but Castellano expressly did not reach the issue whether the Martin Act precludes a negligent misrepresentation claim. Id. at 190 n.9. The New York Court of Appeals also has not resolved this issue. See Suez Equity, 250 F.3d at 104. Finally, until the Court resolves the open question whether the equity interests the THL Funds acquired in Refco are securities, it should not determine whether the Martin Act applies in the first instance to the THL Funds' negligent misrepresentation claim.

D. **The THL Funds Have Adequately Alleged That Mayer Brown Owed a Duty Not to Make Negligent Misrepresentations to the THL Funds**

Mayer Brown's final argument against the THL Funds' state law claims is that the THL Funds cannot pursue a negligent misrepresentation against Mayer Brown because they were not in privity or near privity with Mayer Brown. Br. at 59. This argument fails under both Massachusetts and New York law.

To start, a plaintiff does not have to plead that it was in privity or near privity with an attorney to sue that attorney for negligent misrepresentation under Massachusetts law.[69] Instead, Massachusetts law recognizes a duty running from lawyers to non-clients when the lawyer "knows or has reason to know" that the non-clients are relying on the services rendered. See Kirkland Constr. Co. v. James, 658 N.E.2d 699, 701 (Mass. App. Ct. 1995); Lamare v.

---

[68] See Cromer Fin. Ltd. v. Berger, 2001 WL 1112548, at *3-4 (S.D.N.Y. Sept. 19, 2001); Scalp & Blade, Inc. v. Advest, Inc., 722 N.Y.S.2d 639, 640 (N.Y. App. Div. 2001).

[69] For negligent misrepresentation under Massachusetts law, a plaintiff only has to plead that the defendant: "(1) in the course of [its] business, (2) supplie[d] false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information." First Marblehead Corp. v. House, 473 F.3d 1, 9 (1st Cir. 2006) (quoting Nota Constr. Corp. v. Keyes Assocs., 694 N.E.2d 401, 405 (Mass. App. Ct. 1998)).

Basbanes, 636 N.E.2d 218, 219 (Mass. 1994). Stated differently, lawyers can be liable to non-clients when there is "foreseeable reliance." One Nat'l Bank v. Antonellis, 80 F.3d 606, 609 (1st Cir. 1996). Here, the Amended Complaint abounds with detailed allegations that Mayer Brown knew the THL Funds would be relying on the information that it provided.[70]

Mayer Brown cannot escape liability under Massachusetts law for its misrepresentations by hiding behind the attorney-client privilege or its duty of confidentiality. First, the THL Funds relied on Mayer Brown to provide truthful factual information in response to their requests, not legal advice that might conflict with its clients' interests.[71] Second, the material related-party contracts and indemnification obligations that Mayer Brown failed to disclose to the THL Funds were neither privileged nor confidential because those documents were provided to and executed by third parties separate from Refco and RGHI. Given the well-pleaded allegations in the Amended Complaint, the THL Funds have plainly stated a claim for negligent misrepresentation against Mayer Brown under Massachusetts law.

Even under New York law, the THL Funds may assert a negligent misrepresentation claim against Mayer Brown in the absence of contractual privity where, as here, they can show "that there was . . . a relationship so close as to approach that of privity."

---

[70] See, e.g., Am. Compl. ¶ 42 ("During the due diligence process, Mayer Brown and Collins understood that they would be providing information to the THL Funds upon which the THL Funds would rely in deciding whether to proceed with the 2004 Purchase."); id. ¶ 123 ("Mayer Brown was aware that the information it provided directly to the THL Funds . . . in the course of the transaction would be used . . . for the particular purpose of deciding whether to proceed with the 2004 Purchase, and that the THL Funds did in fact rely upon the oral and written representations described above in deciding to consummate the 2004 Purchase."); id. ¶ 124 ("Mayer Brown was at all times aware that the information it provided and the representations it made to the THL Funds and their representatives would be relied upon and employed by the THL Funds in deciding to proceed with the 2004 Purchase.").

[71] See Kirkland Constr., 658 N.E.2d at 701 (holding that, when a lawyer makes false factual representations to contractor concerning his client's financial status, the "lawyer owes a duty of due care to a nonclient who he or she knows will rely on the services rendered"); Cheswell, Inc. v. Premier Homes & Land Corp., 319 F. Supp. 2d 144, 151 (D. Mass. 2004) (allowing negligence claim to proceed because the defendant-attorney "failed to demonstrate that the [negligent] recording of the mortgage for [the non-client] was so adversarial in nature as to render unreasonable any reliance by [the non-client]").

Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 382 (1992). A "near privity" relationship exists when (i) the defendant makes a statement with the awareness that the statement is to be used for a particular purpose; (ii) a "known party" relies on the statement in furtherance of that purpose; and (iii) there is some conduct by the defendant linking it to the known party and evincing its understanding of the known party's reliance. Id. at 384.[72]

Here, the Amended Complaint specifically alleges that Mayer Brown had regular, direct, and continuous contact with the THL Funds and their representatives – including face-to-face meetings, telephone conferences, email and other correspondence, and that Mayer Brown provided documents directly to the THL Funds – all of which Mayer Brown understood was to induce the THL Funds to make the 2004 Purchase. See, e.g., Am. Compl. ¶¶ 43, 46-48, 53-56. The Amended Complaint also alleges that Mayer Brown knew full well that the THL Funds were relying on the information Mayer Brown was providing and that this information was material to the THL Funds' decision to proceed with the 2004 Purchase. See, e.g., Am. Compl. ¶¶ 42, 123-24. These allegations satisfy Prudential's "near privity" test.

---

[72] That Mayer Brown did not issue an opinion letter to the THL Funds does not bar a negligent misrepresentation claim. In Doehla v. Wathne Ltd., Inc., 1999 WL 566311, at *20 (S.D.N.Y. Aug. 3, 1996) (cited in Br. at 59), the court dismissed the negligent misrepresentation claim, in the absence of an opinion letter, because there were no allegations that the defendant had provided documents directly to the non-client upon which the non-client was urged to rely, that the purpose of the defendant's work was to induce such reliance, or that the defendant held itself out as possessing any special expertise. In addition to Doehla, Mayer Brown has previously cited Crossland Savings FSB v. Rockwood Insurance Co., 700 F. Supp. 1274 (S.D.N.Y. 1988), and Friedman v. Hartmann, 1994 WL 97104 (S.D.N.Y. Mar. 23, 1994), to buttress its contention that attorneys are not liable for their negligent misrepresentations to a third party absent an opinion letter. But these cases do not hold that negligent misrepresentation claims require an opinion letter; instead, Crossland acknowledges that attorneys may be "liable for misrepresentations to third parties when the lawyer is directed by her client to prepare a document for and on behalf of a third party." 700 F. Supp. at 1281. Here, the Amended Complaint contains allegations of the very type that Doehla, Crossland, and Friedman concluded would be sufficient to plead a negligent misrepresentation claim against an attorney. See, e.g., Am. Compl. ¶¶ 55-56, 72-74 (provision of documents prepared specifically for THL Funds); id. ¶¶ 42, 123-24 (THL Funds' reliance on the information provided and Mayer Brown's awareness thereof); id. ¶ 16 ("Mayer Brown presented itself as an expert on all things Refco . . . ."); id. ¶¶ 41, 122, 124-25, 127 (Mayer Brown's role, including to induce THL Funds' reliance for purposes of consummating the transaction). These allegations render the lack of an opinion letter immaterial.

## CONCLUSION

For all the foregoing reasons, the THL Funds respectfully request that the Court deny in their entirety Mayer Brown's motions to dismiss the Amended Complaint.

Dated: New York, New York
        May 23, 2008

| | |
|---|---|
| Mark C. Hansen<br>Silvija A. Strikis<br>James M. Webster III<br>Rebecca A. Beynon<br>KELLOGG, HUBER, HANSEN, TODD,<br> EVANS & FIGEL P.L.L.C.<br>Sumner Square<br>1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036<br>Tel.: (202) 326-7900 | By:  /s/ Greg A. Danilow<br>Greg A. Danilow (GD-1621)<br>Paul Dutka (PD-2568)<br>Christopher R.J. Pace (CP-0001)<br>Seth Goodchild (SG-2296)<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY  10153<br>Tel.: (212) 310-8000<br><br>*Attorneys for Plaintiffs Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee Parallel Fund V, L.P., and Thomas H. Lee Equity (Cayman) Fund V, L.P.* |