**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) ELECTRONICALLY FILED |
| | ) |
| THOMAS H. LEE EQUITY FUND V, L.P., | ) No. 07 MDL 1902 (JSR) |
| THOMAS H. LEE PARALLEL FUND V, L.P., | ) |
| and THOMAS H. LEE EQUITY (CAYMAN) | ) No. 07 Civ. 6767 (JSR) |
| FUND V, L.P., | ) |
| | ) Hon. Jed S. Rakoff |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| MAYER, BROWN, ROWE & MAW LLP, | ) |
| AND JOSEPH P. COLLINS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY MEMORANDUM IN SUPPORT OF**
**MAYER BROWN LLP AND MAYER BROWN INTERNATIONAL LLP'S**
**MOTION TO DISMISS PLAINTIFFS' AMENDED RICO CONSPIRACY CLAIM**

**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000
*Attorneys for Mayer Brown LLP*

**CLIFFORD CHANCE US LLP**
31 West 52nd Street
New York, NY 10019
(212) 878-8000
*Attorneys for UK Limited Liability*
*Partnership Mayer Brown*
*International LLP*

# TABLE OF CONTENTS

I.     PLAINTIFFS' RICO CLAIM AGAINST MAYER BROWN MUST BE DISMISSED BECAUSE MAYER BROWN HAS NOT BEEN CONVICTED. ..................................................................................................... 1

II.    AS TO MR. COLLINS, THERE IS NO CONVICTION, LET ALONE A FINAL CONVICTION. ..................................................................................................... 9

III.   MR. COLLINS WAS NOT CRIMINALLY CONVICTED IN CONNECTION WITH THE FRAUD THAT PLAINTIFFS' RICO CLAIM ALLEGES. ..................................................................................................... 15

IV.   PLAINTIFFS HAVE FAILED TO STATE A RICO CLAIM. ........................................ 19

# TABLE OF AUTHORITIES

## CASES

*131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507 (S.D.N.Y. 1995) ............................................7

*Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) ........................................................12

*Beard v. Banks*, 542 U.S. 406 (2004) ..........................................................................................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................................19

*Berman v. United States*, 302 U.S. 211 (1937)..............................................................................14

*Blackledge v. Perry*, 417 U.S. 21 (1974) .....................................................................................10

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)................................................2, 6

*Cont'l Fin. Co. v. Ledwith*, No. 08 CIV. 7272, 2009 WL 1748875
    (S.D.N.Y. June 22, 2009)......................................................................................................19

*Deal v. United States*, 508 U.S. 129 (1993)...................................................................................11

*deBruyne v. Clay*, No. 94 Civ. 4707, 1997 WL 471039 (S.D.N.Y. Aug. 18, 1997).......................3

*Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103 (1983)............................................................11

*Emich Motors Corp. v. GMC*, 340 U.S. 558 (1951) ......................................................................17

*FDIC v. Finkielstain*, No. 91 Civ. 8020, 1993 WL 525781 (S.D.N.Y. Dec. 16, 1993) ...............17

*Fezzani v. Bear, Stearns & Co.*, No. 99 Civ. 0793, 2005 WL 500377
    (S.D.N.Y. Mar. 2, 2005) ....................................................................................................5, 9

*Flynt v. Ohio*, 451 U.S. 619 (1981)..........................................................................................14, 15

*FMC Corp. v. Boesky (In re Ivan F. Boesky Sec. Litig.)*, 36 F.3d 255 (2d Cir. 1994) ...................6

*Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46 (1989)..........................................................14, 15

*Fuji Photo Film USA, Inc. v. McNulty*, 640 F. Supp. 2d 300 (S.D.N.Y. 2009)............................19

*Geiger v. E.I. DuPont Nemours & Co.*, No. 96 CIV. 2757, 1997 WL 83291
    (S.D.N.Y. Feb. 27, 1997) ......................................................................................................2

*Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38 (2d Cir. 1986) ............................................................14

*GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 891 F. Supp. 64 (D. Conn. 1994),
    *aff'd*, 67 F.3d 463 (2d Cir. 1995) .........................................................................................20

*Gruber v. Prudential-Bache Secs., Inc.*, 679 F. Supp. 165 (D. Conn. 1987)....................................7

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) .........................................19

*Heffernan v. HSBC Bank USA*, No. 1:99CV07981, 2001 WL 803719
    (E.D.N.Y. Mar. 29, 2001) ...................................................................................3

*Hossaini v. W. Mo. Med. Ctr.*, 140 F.3d 1140 (8th Cir. 1998) ........................................3

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649 (S.D.N.Y. 1996),
    *aff'd*, 113 F.3d 1229 (2d Cir. 1997) .............................................................5

*Kavanaugh ex rel. Gonzales v. Nussbaum*, 523 N.E.2d 284 (N.Y. 1988) ......................................3

*Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999) ....................................................7, 8

*Lackawanna County Dist. Att'y v. Coss*, 532 U.S. 394 (2001).......................................10

*Littlefield v. Tilley*, No. 2:06-0061, 2006 WL 2585048 (M.D. Tenn. Sept. 7, 2006) .....................3

*Luthi v. Tonka Corp.*, 815 F.2d 1229 (8th Cir. 1987) .......................................................7

*Mauriber v. Shearson/Am. Express, Inc.*, 567 F. Supp. 1231 (S.D.N.Y. 1983) .............................2

*Mikhlin v. HSBC*, No. 08-1302, 2009 WL 485667 (E.D.N.Y. Feb. 26, 2009) ................................7

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) .......................................................4

*Pinkerton v. United States*, 328 U.S. 640 (1946)....................................................16, 18

*Qatar Nat'l Navigation & Transp. Co. v. Citibank, N.A.*, No. 89 CIV 0464,
    1992 WL 276565 (S.D.N.Y. Sept. 29, 1992).........................................................7, 9

*Reiter v. Cooper*, 507 U.S. 258 (1993) ...........................................................................13

*Rosenbaum v. Comm'r*, T.C. Memo 1983-11, 1983 WL 14146 (T.C. Feb. 24, 1983),
    *rev'd on other grounds*, *Stone v. Comm'r*, 865 F.2d 342 (D.C. Cir. 1989) ...........................17

*Rowe v. Marietta Corp.*, 955 F. Supp. 836 (W.D. Tenn. 1997)........................................3

*Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003) .......................................5

*Schofield v. First Commodity Corp.*, 793 F.2d 28 (1st Cir. 1986)....................................7

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008) ................................20

*Tittle v. Enron Corp. (In re Enron Corp. Sec., Derivative & ERISA Litig.)*,
    284 F. Supp. 2d 511 (S.D. Tex. 2003) ..............................................................4, 12

*United States v. A & P Trucking Co.*, 358 U.S. 121 (1958) ............................................................1

*United States v. Brooks*, 82 F.3d 50 (2d Cir. 1996) ......................................................................3

*United States v. Guzzone*, 273 F.2d 121 (2d Cir. 1959).................................................................17

*United States v. Sanchez*, 969 F.2d 1409 (2d Cir. 1992) ..............................................................11

*United States v. Triumph Capital Group, Inc.*, 544 F.3d 149 (2d Cir. 2008)..............................11

*United States v. Wainer*, 211 F.2d 669 (7th Cir. 1954) ................................................................17

*United States v. Wilson*, 420 U.S. 332 (1975) ..............................................................................10

*USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319 (S.D.N.Y. 2003).........................7, 8

*W. Laundry & Linen Rental Co. v. United States*, 424 F.2d 441 (9th Cir. 1970)..........................1

## STATUTES

18 U.S.C. § 1962(c) .........................................................................................................................9

18 U.S.C. § 1964(c) .................................................................................................................. passim

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 9 ..................................................................................................20

Federal Rule of Civil Procedure 60 ................................................................................................13

Federal Rule of Criminal Procedure 33 ..........................................................................................11

Department of Justice, Principles of Federal Prosecution of Business Organizations
(2006), *available at* www.justice.gov/dag/speeches/2006/mcnulty_memo.pdf .......................2

Elizabeth K. Ainslie*, Indicting Corporations Revisited: Lessons of the Arthur Andersen
Prosecution*, 43 Am. Crim. L. Rev. 107 (2006) ......................................................................2

Philip A. Lacovara & David P. Nicoli, *Vicarious Criminal Liability of Organizations:
RICO as an Example of a Flawed Principle in Practice*, 64 St. John's L. Rev. 725
(1990)....................................................................................................................................7, 8

**I.      PLAINTIFFS' RICO CLAIM AGAINST MAYER BROWN MUST BE
DISMISSED BECAUSE MAYER BROWN HAS NOT BEEN CONVICTED.**

In its opening memorandum, Mayer Brown established that the plain language of the

PSLRA bars Plaintiffs' RICO claim against it because it is not a "person that [was] criminally

convicted in connection with the fraud."  18 U.S.C. § 1964(c); *see* Mem. 9–15.  Although RICO

is a federal statute and its interpretation is controlled by federal law, Plaintiffs devote the bulk of

their response to an extended digression concerning various state-law theories of vicarious

liability.  None of those theories can overcome the PSLRA bar, which the courts have

consistently applied according to its plain terms.  Moreover, even if vicarious liability theories

were relevant—and they are not—there would be no basis to permit a RICO claim against Mayer

Brown here, because Mayer Brown is a firm with hundreds of partners, only a single partner was

convicted, and the government's theory was that Mr. Collins deceived his own partners about the

Refco fraud.

1.      18 U.S.C. § 1964(c) clearly states that only a "person that is criminally convicted

in connection with the fraud" may be sued in a RICO claim predicated on securities fraud.  Here,

there is no question that the criminal prosecution at issue was brought against Mr. Collins, not

Mayer Brown.  The jury found Mr. Collins guilty, not Mayer Brown.  The sentence imposed by

the court was imposed on Mr. Collins, not the firm.

While there may be circumstances in which the law treats a partner and his partnership as

one and the same, conviction of a federal crime is not one of them.  It has been clear at least

since *United States v. A & P Trucking Co.*, 358 U.S. 121 (1958), that under federal criminal law

a partnership is a legal entity that is distinct from its partners.  *See, e.g.*, *W. Laundry & Linen

Rental Co. v. United States*, 424 F.2d 441, 445 (9th Cir. 1970) (recognizing that "[t]he Supreme

Court has [for purposes of federal criminal law] adopted the entity theory" of partnership; rejecting claim that indictment of both partner and partnership constituted double jeopardy).

In recent years, the most prominent example of the fundamental distinction between a conviction of a partner and a conviction of a partnership is the criminal case against Arthur Andersen LLP. An Andersen partner, David Duncan, pleaded guilty to obstruction of justice in connection with the firm's work for Enron. The government nonetheless prosecuted the Andersen partnership for obstruction of justice and obtained a conviction of the firm, something that has not happened here. It was the direct and collateral consequences of the latter conviction that led to the demise of Arthur Andersen and sparked a debate about the wisdom of charging business organizations with crimes. *See, e.g.*, Elizabeth K. Ainslie, *Indicting Corporations Revisited: Lessons of the Arthur Andersen Prosecution*, 43 Am. Crim. L. Rev. 107 (2006).[1] There can be no doubt that conviction of a partner and conviction of a partnership are not the same thing.[2]

---

[1] The Justice Department has promulgated specific guidelines for prosecutors considering criminal charges against business organizations, including partnerships, because of the special policy concerns implicated by such prosecutions. *See* Principles of Federal Prosecution of Business Organizations (2006), *available at* www.justice.gov/dag/speeches/2006/mcnulty_memo.pdf). These guidelines require prosecutors to consider numerous factors that go beyond common-law principles of vicarious liability in deciding whether to prosecute business organizations.

[2] Plaintiffs' reliance on the intracorporate conspiracy doctrine under antitrust law, Opp. 21–23, is misguided for multiple reasons. For one, even in the context of antitrust law, courts have declined to apply that doctrine with respect to criminal liability. *See, e.g.*, *Geiger v. E.I. DuPont Nemours & Co.*, No. 96 CIV. 2757, 1997 WL 83291, at *9 (S.D.N.Y. Feb. 27, 1997). And second, the Supreme Court has made clear that the intracorporate conspiracy doctrine "turns on specific antitrust objectives" and thus does not apply to RICO. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 166 (2001). *See also Mauriber v. Shearson/Am. Express, Inc.*, 567 F. Supp. 1231, 1241 (S.D.N.Y. 1983).

2.    Courts consistently have interpreted § 1964(c) as authorizing suit only against the specific person convicted. *See* Mem. 11–15 (citing cases).[3] Plaintiffs' attempt to distinguish these cases on the ground that they did not involve partnership liability misses the point. Partnership liability is just one form of vicarious liability.[4] Many of the decided cases involved allegations which could have subjected the defendants to suit if a "criminal[] convict[ion]" for purposes of § 1964(c) somehow could be established vicariously. In none of the cases, however, did the court lift the PSLRA bar as to any defendant not actually convicted.[5]

For example, *Rowe v. Marietta Corp.*, 955 F. Supp. 836, 848 (W.D. Tenn. 1997), involved a corporate officer who was convicted, and thus if Plaintiffs were right that a conviction for § 1964(c) purposes can be established vicariously, the corporate defendant would have been deemed convicted, but the court permitted a RICO claim only against the individual. *Heffernan v. HSBC Bank USA*, No. 1:99CV07981, 2001 WL 803719, at *4 (E.D.N.Y. Mar. 29, 2001), involved allegations that the bank defendant permitted a former employee (who pleaded guilty) to hold himself out as an agent of the bank, but the court held that the PSLRA bar was not lifted as to the bank. And numerous cases involved allegations of conspiracy that could normally

---

[3] Plaintiffs cite *Littlefield v. Tilley*, No. 2:06-0061, 2006 WL 2585048 (M.D. Tenn. Sept. 7, 2006) (mem.), as a case in which a corporation's motion to dismiss was denied where one director had been criminally convicted. Opp. 27. The court in *Littlefield* did not devote any discussion or analysis to the propriety of lifting the PSLRA bar as to the corporation as opposed to the individual defendant who had been convicted, and thus this unpublished opinion is entitled to no weight.

[4] *See deBruyne v. Clay*, No. 94 Civ. 4707, 1997 WL 471039, at *7–8 (S.D.N.Y. Aug. 18, 1997) (respondeat superior is a form of vicarious liability); *United States v. Brooks*, 82 F.3d 50, 54 (2d Cir. 1996) (vicarious liability is aspect of conspiracy law); *Kavanaugh ex rel. Gonzales v. Nussbaum*, 523 N.E.2d 284, 288 (N.Y. 1988) (describing partnership and agency as traditional forms of vicarious liability).

[5] Since the issue is one of construing a federal statute (§ 1964(c)), it is governed by federal law. "[F]ederal law governs questions involving the interpretation of a federal statute." *Hossaini v. W. Mo. Med. Ctr.*, 140 F.3d 1140, 1144 (8th Cir. 1998) (internal quotation marks omitted).

permit one defendant to be held liable for the acts of another. Thus, the plaintiffs in *Tittle v. Enron Corp. (In re Enron Corp. Sec., Derivative & ERISA Litig.)*, 284 F. Supp. 2d 511 (S.D. Tex. 2003), argued that because one member of the alleged RICO conspiracy (Michael Kopper) had pleaded guilty, § 1964(c) authorized suit against all other members of the alleged RICO conspiracy. But the court did not impute the conviction of one conspirator to the other conspirators and rather held that only the defendants who had been convicted could be sued under RICO. *Id.* at 623–24.

Thus, courts have rejected the notion that a conviction of one person somehow can be imputed to another person or entity. Plaintiffs' attempt to establish a conviction of Mayer Brown on such a theory should be rejected as well.[6]

Moreover, as discussed in the opening memorandum, Congress expressly considered and rejected a proposal to lift the PSLRA bar not only as to the specific convicted person but also as to other members of the same scheme. *See* Mem. 14. That, too, represented a potential way of imputing a conviction from one person to others. Congress's express refusal to lift the bar based on one form of imputation also shows that it did not intend any other form of imputation—based on partnership law, agency law, or anything else—to lift the bar. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 n.57 (1978) ("[W]hen Congress' rejection of the only form of vicarious liability presented to it is combined with the absence of any language in [the statute] which can easily be construed to create *respondeat superior* liability, the inference that Congress did not intend to impose such liability is quite strong.").

---

[6] Plaintiffs argue confusingly that Mayer Brown may be sued under principles of agency because they have alleged that several Mayer Brown lawyers other than Mr. Collins were involved. Opp. 21. Even apart from the fundamental flaw that agency law is but one more form of vicarious liability which is inconsistent with § 1964(c), Plaintiffs' argument is improper because it relies on alleged conduct by persons who indisputably have not been convicted of any crime.

Plaintiffs' suggestion that Congress intended to lift the PSLRA bar whenever there has been a determination of criminal wrongdoing *by anyone*, Opp. 24, flies in the face of both the legislative history of § 1964(c) and the case law interpreting that provision. "[T]he criminal-conviction exception is expressly associated with a particular defendant." *Fezzani v. Bear, Stearns & Co.*, No. 99 Civ. 0793, 2005 WL 500377, at *4 n.2 (S.D.N.Y. Mar. 2, 2005). Especially in light of RICO's status as "the litigation equivalent of a thermonuclear device," *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997), with powerful remedies that "warrant[] concern[s] over the consequences of an unbridled reading of the statute," *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 412 (2003) (Ginsburg, J., concurring) (internal quotation marks omitted) (second alteration in original), it would be improper to go beyond the criminal-conviction proviso's plain language.

Doctrines that recognize that corporations, partnerships, and other organizations act through their agents and thus in many circumstances are vicariously responsible for the agents' conduct have no relevance to interpreting the criminal-conviction proviso in § 1964(c), the applicability of which turns not on conduct but on a prior adjudication, specifically, a criminal conviction. Application of the proviso necessarily depends on who was convicted, and in this case Mayer Brown has not been convicted.

3.      Even assuming for the sake of argument that a "criminal[] convict[ion]" for purposes of § 1964(c) could ever be established by imputing to an organization the convictions of members of the organization, this would not be an appropriate case for such imputation. The personnel who work at Mayer Brown—attorneys, secretaries, paralegals, and others—number in the thousands. Refco was one client among thousands. Should Judge Patterson enter a conviction later this year in the Collins prosecution, *a single member* of the organization will

have been convicted. And Mr. Collins was found guilty in a trial in which the government specifically contended that he lied to his partners, who were "trying to do their job as legitimate lawyers."[7]

In a case in which most of the members of an organization had been found guilty of criminal activity that they conducted with the full knowledge of management of the organization and that constituted a major part of the organization's business, conceivably an argument could be made for treating the organization as if it had been found guilty, though we submit the plain language of § 1964(c) would require rejection of any such argument. But in any event, the facts of this case do not remotely support imputing to Mayer Brown any conviction that may be entered as to Mr. Collins.

4.     Because the PSLRA bar rules out liability on the part of Mayer Brown, vicarious liability theories are irrelevant. But even if the Court were to consider whether Mayer Brown could be held liable based on Mr. Collins's conduct in the absence of the PSLRA bar, the correct answer under RICO would be that it could not.

Both the Supreme Court and the Second Circuit have left open the question of whether vicarious liability is available under RICO. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 166 (2001); *FMC Corp. v. Boesky (In re Ivan F. Boesky Sec. Litig.)*, 36 F.3d 255, 262 (2d Cir. 1994). Although courts sometimes assume the applicability of common-law doctrines of vicarious responsibility, they do not do so where it would be inconsistent with the purposes of

---

[7] Collins Trial Tr. at 4731 (Gov't's Closing Argument), *United States v. Collins*, S1 07 Cr. 1170 (S.D.N.Y.) (Second Ward Decl., Ex. A). *See also id*. (Collins "lied to [his partners] and deceived them"); *id*. at 205–06 (Gov't's Opening Statement) (Collins "kept these agreements secret even from the lawyers at his own law firm"; he "kept them completely out of the loop"); Gov't's Sentencing Mem. at 27 (Ward Decl., Ex. A) (Collins "kept the [Proceeds Participation Agreement] from his colleagues"). Mayer Brown does not agree with these assertions, but they underlie the guilty verdict on which Plaintiffs seek to base their claim.

the federal statute in question. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 544–45 (1999).

Contrary to Plaintiffs' argument that the purposes of RICO support vicarious liability, Opp. 23, many courts have observed that "vicarious liability [is] . . . at odds with Congressional intent in enacting RICO since the statute was designed to protect [entities] from criminal infiltration rather than hold them liable." *Qatar Nat'l Navigation & Transp. Co. v. Citibank, N.A.*, No. 89 CIV 0464, 1992 WL 276565, at *7 (S.D.N.Y. Sept. 29, 1992). *See also, e.g.*, *Luthi v. Tonka Corp.*, 815 F.2d 1229, 1230 (8th Cir. 1987); *Schofield v. First Commodity Corp.*, 793 F.2d 28, 32–33 (1st Cir. 1986).[8]

Most courts in this Circuit that have recognized vicarious liability under RICO have held entities liable for an individual's conduct only when the entity itself is a "central figure" or "aggressor" in the RICO scheme. *See, e.g.*, *Mikhlin v. HSBC*, No. 08-1302, 2009 WL 485667, at *8 (E.D.N.Y. Feb. 26, 2009); *USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319, 328 (S.D.N.Y. 2003); *Qatar*, 1992 WL 276565, at *7; *Gruber v. Prudential-Bache Secs., Inc.*, 679 F. Supp. 165, 180–81 (D. Conn. 1987) (Cabranes, J.).[9] Ultimately, the Court should consider

---

[8] Although some of the cases that have disapproved of vicarious liability under RICO involved allegations that the defendant entity was itself the alleged RICO enterprise, courts in this district have "ma[de] it clear that even where the defendant corporation is not the RICO 'enterprise,' holding a corporation liable for the RICO violations of its employees conflicts with the purpose of the RICO statute." *Qatar*, 1992 WL 276565, at *8. Allowing legitimate businesses such as Mayer Brown to be the targets of RICO suits under vicarious liability theories is inconsistent with Congress's clear intent to protect, not target, legitimate businesses. *See* Philip A. Lacovara & David P. Nicoli, *Vicarious Criminal Liability of Organizations: RICO as an Example of a Flawed Principle in Practice*, 64 St. John's L. Rev. 725, 751 (1990) (recognition of respondeat superior would "turn[] Congress' intent in enacting [RICO] on its head").

[9] While a few cases have permitted claims of vicarious liability under RICO to proceed against partnerships without considering the culpability of the entity as a whole, *see, e.g.*, *131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1533–35 (S.D.N.Y. 1995), such decisions do not properly apply the policies of RICO and unduly threaten legitimate entities with treble damages.

whether the acts "are sufficiently representative of the [entity] as a whole" to justify imposition of RICO liability. *USA Certified Merchs.*, 262 F. Supp. 2d at 327–28.[10]

Here, Plaintiffs do not allege facts showing that Mayer Brown as an entity was a central figure or "aggressor" in the alleged RICO scheme. Plaintiffs allege that Phillip Bennett "engineered" the Refco fraud, SAC ¶ 24, not Mayer Brown. They do not claim that any Mayer Brown lawyer was an "operator" of the scheme or that Mayer Brown regularly conducted its business through racketeering.

Plaintiffs do not allege facts showing that allegedly fraudulent conduct was in any way representative of Mayer Brown as a whole.[11] Indeed, according to the government's prosecution of Mr. Collins, which Plaintiffs embrace as the basis for their claim, Mr. Collins hid important elements of the alleged fraud from his partners on the Refco account. Although the Complaint vaguely alleges that other Mayer Brown lawyers were involved, it identifies only one (an associate). The Complaint includes no facts tending to show that the firm realized any direct benefit from the Refco fraud.[12] In sum, Plaintiffs allege no facts that could justify imposition of

---

[10] These holdings are consistent with the limitations imposed by the Supreme Court on vicarious imposition of punitive forms of civil liability against entities that make good-faith efforts to comply with the law. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 544 (1999) (barring punitive damages against employers under Title VII where employers make good-faith effort to comply; "it is improper ordinarily to award punitive damages against one who himself is personally innocent and therefore liable only vicariously" (internal quotation marks omitted)).

[11] That Mr. Collins was a partner does not establish that he was a sufficiently high-level official of Mayer Brown to justify imposition of liability on the firm. *See* Lacovara & Nicoli, *supra*, at 751 (RICO vicarious liability should not be imposed where the individual involved "holds a title, such as vice president or partner, that in fact does not entitle him to determine the organization's fundamental policies").

[12] In sentencing Mr. Collins, Judge Patterson found that he "did not receive any criminal proceeds or property traceable to the proceeds of the conspiracy." Collins Sentencing Tr. at 38, *United States v. Collins*, S1 07 Cr. 1170 (S.D.N.Y.) (Second Ward Decl., Ex. B); *see also id.* at 34–42. Mayer Brown received fees for its work for Refco, but the vast majority of these fees had no connection to the alleged fraud, and none of the fees represented the proceeds of the fraud.

RICO treble damages on it as an entity (and indirectly on its thousands of innocent partners and employees).

* * *

Even before enactment of the PSLRA bar, the substantive RICO provision invoked by Plaintiffs (18 U.S.C. § 1962(c)) was "phrased so as to limit rather than expand the range of potential violators." *Qatar*, 1992 WL 276565, at *9. In enacting it, "Congress had a specific target in mind[:] . . . the individual wrongdoer, in contrast to the more general purposes behind the antitrust and securities acts." *Id.* Then, Congress enacted the PSLRA bar, which further narrowed the category of potential defendants. Congress created one, narrow exception to that bar, an exception that is "expressly associated with a particular defendant" who has been criminally convicted. *Fezzani*, 2005 WL 500377, at *4 n.2. Mayer Brown has not been convicted and thus cannot be sued under RICO.

## II.    AS TO MR. COLLINS, THERE IS NO CONVICTION, LET ALONE A FINAL CONVICTION.

Plaintiffs' claim also should be dismissed because even as to Mr. Collins, no conviction has been entered, much less become final by withstanding appellate review. The only court to decide the issue has ruled that a conviction does not trigger the proviso while it still remains subject to challenge on appeal. But this case is easier because no conviction has even been entered, and none will be until at least the spring of this year.

1.    Plaintiffs imply in their memorandum that Judge Patterson has entered a judgment of conviction. Plaintiffs say that "even were 'convict[ion]' interpreted to mean *the entry of a final judgment* upon sentencing, Collins was sentenced on January 15, 2010." Opp. 10 (emphasis added). The implication is that after the January 15 sentencing hearing, Judge Patterson entered a final judgment, as courts usually do after sentencing. But the reality is

different.  Even as of today, over two weeks after the filing of Plaintiffs' memorandum, Judge

Patterson has *not* entered judgment.  Rather, the motion filed by Mr. Collins for a new trial on

the ground of newly discovered evidence remains pending.  Also, on January 21, 2010, Judge

Patterson approved a schedule for briefing issues relating to the government's request for

restitution; that schedule concludes with a final brief on April 1, 2010, and a hearing is scheduled

for April 14, 2010.  *See* Letter from Jonathan Bach, Esq., Counsel for Mr. Collins, to Judge

Robert P. Patterson (Jan. 20, 2010) (Second Ward Decl., Ex. C).  It appears that no judgment of

conviction will be entered, if at all, until at least mid-April.

Accordingly, for Plaintiffs to survive Mayer Brown's second argument for dismissal,

they must prevail on their contention that as soon as a person has been found guilty by a jury, he

has been "criminally convicted" within the meaning of § 1964(c).  Opp. 9–10.  That contention,

however, is untenable.  First, it cannot be squared with the final clause of § 1964(c), which reads:

"in which case the statute of limitations shall start to run on the date on which *the conviction

becomes final*."  18 U.S.C. § 1964(c) (emphasis added).  This shows Congress did not intend

"criminally convicted" earlier in the same sentence to include a jury verdict of guilty.  *Id*.  It is

common to refer to a conviction entered after sentencing "becoming final,"[13] but one would not

---

[13] *See, e.g.*, *Beard v. Banks*, 542 U.S. 406, 411 (2004) (explaining that "the determination whether a constitutional rule of criminal procedure applies to a case on collateral review involves a three-step process.  First, the court must determine when the defendant's *conviction became final*." (emphasis added) (citation omitted)); *Lackawanna County Dist. Att'y v. Coss*, 532 U.S. 394, 403 (2001) ("A defendant may choose not to seek review of his conviction within the prescribed time.  Or he may seek review and not prevail, either because he did not comply with procedural rules or because he failed to prove a constitutional violation.  In each of these situations, *the defendant's conviction becomes final . . . .*" (emphasis added)); *United States v. Wilson*, 420 U.S. 332, 343 n.11 (1975) (noting that the rule that a second trial on the same charge is not double jeopardy, where the defendant sought a new trial, had been explained on the grounds "that the defendant waives his double jeopardy claim by appealing his conviction, or that the first jeopardy continues until he is acquitted or his *conviction becomes final*" (emphasis added)); *Blackledge v. Perry*, 417 U.S. 21, 27 (1974) (examining state procedure whereby

10

ordinarily refer to a jury verdict "becoming final."  There is no dispute that for some purposes a jury verdict can be deemed a conviction,[14] but the language of § 1964(c) indicates that Congress did not intend "criminally convicted" in that provision to mean found guilty by a jury.

Second, to the extent they are ambiguous, statutes should not be interpreted to produce unreasonable results, and it would be unreasonable to treat a jury verdict of guilty as sufficient to trigger civil RICO litigation.  Courts often submit cases to juries even when there are grave doubts as to whether a guilty verdict could stand up, and there are many grounds upon which a jury verdict may be set aside.  The trial court also may "grant a new trial if the interests of justice so require," language which grants courts broad authority to order a new trial.  Fed. R. Crim. P. 33(a); *see United States v. Triumph Capital Group, Inc.*, 544 F.3d 149, 159 (2d Cir. 2008); *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992) ("By its terms, Rule 33 confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.")  There also may be important legal issues that are only for the trial judge and not the jury to decide.  It would make little sense to set in motion civil RICO

---

prosecutor could charge defendant with a felony if he exercised his right to appeal following misdemeanor conviction and stating that "[a] prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial de novo in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's *conviction becomes final*, and may even result in a formerly convicted defendant's going free." (emphasis added)).

[14] Although Plaintiffs suggest that the "ordinary meaning" of conviction denotes a jury verdict of guilty, Opp. 9, the cases they cite do not support that proposition.  *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103 (1983), did not involve a jury verdict of guilty.  The adjudication in that case involved a guilty plea and a court order reciting that the defendant had pleaded guilty and had consented to deferment of sentence, that there were unusual circumstances, and that the court deferred entry of a formal judgment and placed the defendant on probation.  *See id.* at 106–07.  The Court's holding was as follows:  "[W]e equate *a plea of guilty and its notation by the state court, followed by a sentence of probation*, with being 'convicted' within the language of [18 U.S.C. §] 922(g) and (h)."  *Id.* at 114 (emphasis added).  *Deal v. United States*, 508 U.S. 129 (1993), does not support Plaintiffs' position for the reasons stated in Mayer's Brown's opening memorandum.  *See* Mem. at 19 n.12.

litigation, in which claims typically span many years and sweeping discovery requests are common, on the basis of an unreviewed jury verdict.

Thus, although Mayer Brown contends that a conviction must also withstand appeal before it permits a civil RICO claim under the proviso, at a minimum there must be a judgment of conviction. And there is no such judgment of conviction even as to Mr. Collins. For this reason also, Plaintiffs' RICO claim must be dismissed.

2. Whether a judgment of conviction brings the proviso into play as to the convicted defendant (i) once entered or (ii) only if it survives appellate review is, at this point, a hypothetical issue the Court need not reach. If, however, the Court prefers to reach the issue, it should rule that during the pendency of a timely appeal, a judgment of conviction does not permit the commencement of a civil RICO claim under the proviso.

Plaintiffs do not dispute that the only court to address the issue has held that a conviction must become final before it lifts PSLRA's bar on RICO claims based on conduct actionable as securities fraud. *See Tittle*, 284 F. Supp. 2d at 624 ("[T]he conviction must be final before the exception is triggered."). Although Plaintiffs dismiss that decision, Opp. 17 n.4, the wisdom of the court's ruling was confirmed by later events in related litigation.

When the court dismissed the civil RICO claims in that case, accounting firm Arthur Andersen LLP stood convicted of a felony, *see Tittle*, 284 F. Supp. 2d at 623, but the conviction had not been tested on appeal. As it turned out, a unanimous Supreme Court later reversed that conviction. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 698, 708 (2005). It would have been a waste of time and money if the court had interpreted the statute the way Plaintiffs interpret it. If the court had adopted that interpretation, the parties might well have proceeded with fact and expert discovery, motions for summary judgment, pretrial preparation, and perhaps

a trial on a civil RICO claim that assumed, incorrectly, the validity of Arthur Andersen's conviction.

Plaintiffs suggest that a motion under Federal Rule of Civil Procedure 60(b) provides adequate protection against a RICO judgment based on a conviction that is later overturned. Opp. 13–14. But once a party has collected the proceeds of a judgment, it is free to spend them. Accordingly, even a successful Rule 60(b) motion may not provide an effective remedy, much less prevent the needless waste of the parties' and the court's resources.

Plaintiffs argue that even if "criminally convicted" refers to a judgment of conviction, the exception is triggered as soon as the judgment is entered—which has not happened in Mr. Collins's case—and before it has been tested on appeal. Opp. 10–11. They rely principally on the fact that the final clause of the proviso ("in which case the statute of limitations shall start to run on the date on which the conviction becomes final") refers to "becom[ing] final," but the prior clause ("The exception contained in the preceding sentence does not apply in an action against any person that is criminally convicted in connection with the fraud, . . . .") does not. 18 U.S.C. § 1964(c). Mayer Brown agrees with Plaintiffs that the language of the statute matters— something Plaintiffs seem to forget when they argue that somehow Mayer Brown is a "person that [was] criminally convicted." *Id.* Mayer Brown disagrees, however, that the lack of a reference to finality in the first clause of the proviso is dispositive. It would be wholly anomalous for a claim to accrue at different times, depending upon whether one is asking (i) whether the limitations period has begun to run or instead asking (ii) whether the plaintiff may bring suit.[15]

---

[15] *See Reiter v. Cooper*, 507 U.S. 258, 267 (1993) ("While it is theoretically possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute

The result that Plaintiffs advocate would also be contrary to public policy. "Appellate review plays a central role in assuring the accuracy of decisions." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986). Scarce judicial resources should not be expended on the litigation of a claim that is entirely dependent upon the outcome of a case that has not reached the appellate stage. Courts have more pressing demands than resolving claims for treble damages whose very premise may be demolished by a pending appeal.

Plaintiffs' final argument is that a conviction becomes final upon sentencing, rather than after direct review. Opp. 14. The first three cases Plaintiffs cite on this point do not support Plaintiffs' position, however, because they deal with finality for purposes very different from deciding whether a conviction is sufficiently final to trigger a civil claim. One also emphasizes the need for a judgment—something lacking at this stage in *United States v. Collins*.

Plaintiffs cite *Berman v. United States*, 302 U.S. 211 (1937), in which the Court held that a criminal defendant was entitled to appeal after he was convicted and sentenced to a year and a day in prison, notwithstanding that the district court suspended execution of the sentence and placed the defendant on probation. *See id.* at 212. In that context, it would have made no sense at all to say that completion of appellate review was necessary for finality—the very issue was whether the defendant was entitled to appeal despite the suspension of the sentence.

The other two cases cited by Plaintiffs, *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46 (1989), and *Flynt v. Ohio*, 451 U.S. 619 (1981) (per curiam), deal with the general rule (to which there are four exceptions) that the Supreme Court's "jurisdiction to review . . . state-court decision[s] is generally limited to a final judgment rendered by the highest court of the State in which [a] decision [can] be had." *Flynt*, 451 U.S. at 620; *see Fort Wayne Books*, 489 U.S. at 54.

of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute.").

In one case, the Court reasoned that the state-court decision was not final because "there has been no finding of guilt and no sentence imposed," and none of the four exceptions to the general rule applied. *Flynt*, 451 U.S. at 620. In the other case, the Court reasoned that since there had been neither a judgment of conviction nor a sentence, "we would usually conclude that the judgment below is not final and is hence unreviewable," but that one of the exceptions applied and rendered the judgment reviewable. *Fort Wayne Books*, 489 U.S. at 54–55. These decisions concerning the Supreme Court's jurisdiction have no bearing on the question whether a conviction that has not been tested on appeal suffices to bring the proviso in § 1964(c) into play.

Plaintiffs also seek support in case law to the effect that the preclusive effect of a judgment, including a judgment in a criminal case, is not affected by the pendency of an appeal. Opp. 15–16. In those cases, however, the judgment is offered simply to establish one or more facts in support of an existing claim or criminal charge. By contrast, here Plaintiffs seek to use the prospect that a conviction may be entered against Mr. Collins to remove a statutory bar to the bringing of a claim.

## III.    MR. COLLINS WAS NOT CRIMINALLY CONVICTED IN CONNECTION WITH THE FRAUD THAT PLAINTIFFS' RICO CLAIM ALLEGES.

In its opening memorandum, Mayer Brown demonstrated that Plaintiffs' RICO claim also suffers from a third defect: It alleges a massive fraud spanning many years, but in the criminal case the government argued to the jury that it could convict Mr. Collins on a much narrower basis; and any predicate acts alleged by Plaintiffs that correspond to that narrow basis for conviction do not satisfy RICO's "pattern" requirement because they all occurred during a short time period. *See* Mem. 24–31. Plaintiffs respond with three arguments, none of which has merit.

1.     According to Plaintiffs, "to say that a person was convicted 'in connection with a crime' does not require that the person be convicted of the crime itself." Opp. 28. Thus, it purportedly does not matter whether Collins was found guilty of the fraud alleged in Plaintiffs' civil RICO claim. Plaintiffs say it is "enough if the conviction were based on conduct relating to or connected with the crime" alleged in the civil RICO claim. *Id.*

Plaintiffs' argument is completely untenable. In stating that "[t]he exception contained in the preceding sentence does not apply in an action against any person that is *criminally convicted in connection with the fraud*," 18 U.S.C. § 1964(c) (emphasis added), the proviso directs attention to *the basis of the conviction*. To the extent that an action concerning conduct actionable under the securities law is based on allegedly fraudulent conduct for which the person was not convicted, the action exceeds the authorization granted by Congress.

Plaintiffs' interpretation would make sense if, instead of the language that actually appears in the last sentence of § 1964(c), Congress had provided that "[t]he exception contained in the preceding sentence does not apply in an action against any person that is criminally convicted on a count in which the fraud was *alleged*." But Congress did not so provide, and the statute should not be interpreted as if it had.

2.     Next, citing *Pinkerton v. United States*, 328 U.S. 640 (1946), Plaintiffs assert that "[t]he jury's determination that Collins was guilty of a conspiracy necessarily means that the jury found Collins guilty of participation in the broad, multi-year fraud that forms the basis for the THL Funds' civil RICO claim." Opp. 30. That assertion ignores controlling authority and the record of the *Collins* trial and rests on a misconception of the *Pinkerton* decision.

Plaintiffs ignore settled law concerning the import of a general verdict of guilty on a conspiracy charge, which is the kind of verdict the jury returned on the conspiracy count against

Mr. Collins.  It has long been established that "[a] general verdict of the jury . . . does not indicate which of the means charged in the indictment were found to have been used in effectuating the conspiracy. . . .  [S]uch a verdict does not establish that defendants used all of the means charged or any particular one."  *Emich Motors Corp. v. GMC*, 340 U.S. 558, 568–69 (1951) (citation omitted).  The rule is so clear that eight years after *Emich Motors*, the Second Circuit declared:  "'Obviously a general verdict of guilty . . . on a count for conspiracy does not determine which of the particular means charged in the indictment were used to effectuate the conspiracy.'"  *United States v. Guzzone*, 273 F.2d 121, 123 (2d Cir. 1959) (quoting *United States v. Wainer*, 211 F.2d 669, 672 (7th Cir. 1954)).[16]

The record of the *Collins* trial also refutes Plaintiffs' contention.  The court specifically instructed the jury that "the defendant need not have joined in all of the conspiracy's unlawful objectives or have been involved in the conspiracy from the outset of the conspiracy."  Collins Trial Tr. at 5176, *United States v. Collins*, S1 07 Cr. 1170 (S.D.N.Y.) (Second Ward Decl., Ex. A).  The court also instructed:

> The indictment charges that the conspiracy set forth in count one existed from at least as early as in or about 1997 through up to and—in or about October, 2005. It is not essential that the government prove that the conspiracy started and ended on those specific dates.  Indeed, it's sufficient if you find beyond a reasonable doubt that the charged conspiracy in fact was formed and *that it existed for some time within the period set forth in the indictment*, and that *at least one of the overt acts* alleged in the indictment was committed in furtherance of the charged conspiracy within that period.

*Id*. at 5186 (emphases added).

---

[16] *See FDIC v. Finkielstain*, No. 91 Civ. 8020, 1993 WL 525781, at *6 (S.D.N.Y. Dec. 16, 1993) (following *Guzzone*); *Rosenbaum v. Comm'r*, T.C. Memo 1983-11, 1983 WL 14146 (T.C. Feb. 24, 1983) ("A plea of guilty to a conspiracy can thus work no collateral estoppel as to the substantive acts alleged as the means of effectuating the conspiracy."), *rev'd on other grounds*, *Stone v. Comm'r*, 865 F.2d 342 (D.C. Cir. 1989).

Plaintiffs invoke *Pinkerton* in an apparent attempt to circumvent *Emich Motors*, *Guzzone*, and similar decisions. But *Pinkerton* has nothing to do with *discerning the basis of a conspiracy conviction*. Rather, that decision dealt with when a conspirator may be found criminally liable for *substantive offenses* committed by other conspirators. *See Pinkerton*, 328 U.S. at 645–48. *Pinkerton* is irrelevant here because Mr. Collins was not found liable for any substantive offenses under that theory. Indeed, the court's charge to the jury did not include a *Pinkerton* instruction.

3. Plaintiffs further argue that even if the jury found Collins guilty "based on a temporally narrower fraud than is alleged" in Plaintiffs' RICO claim, that finding "would still satisfy RICO's pattern—or continuity—requirement." Opp. 31. This is so, according to Plaintiffs, because their complaint alleges that "[t]he fraud against the THL Funds was part of a multifaceted enterprise designed to defraud numerous parties—including regulators, lenders, and investors—that did not cease with the 2004 purchase and did and would have continued into the future." *Id.* (citations omitted). Plaintiffs' argument fails for two reasons.

First, the jury may have found Collins guilty solely based on one or more nondisclosures in connection with the August 2004 LBO or the August 2005 IPO. *See, e.g.*, Second Ward Decl., Ex. A at 4691 (prosecutor argues Collins "knew that Refco was going to be hiding the PPA from Lee"); *id.* at 4694 (prosecutor argues Collins "knew Refco was required to disclose the PPA to Lee, but he still repeatedly lied to hide it"). Even if fraudulent, such nondisclosures in connection with one or two discrete transactions would not establish that fraud was "'the regular way of operating [a legitimate] business.'" Opp. 31 (quoting a case) (alteration in original). Thus, the conduct that was likely the basis for the finding of guilty does not satisfy the pattern requirement.

Second, even if the pattern requirement were satisfied, Plaintiffs' RICO claim includes sweeping allegations about alleged fraud of which there is no indication that Collins was found guilty. *See, e.g.*, SAC ¶ 100(a) (alleging that from 2000 through 2005 Collins and others "negotiated, participated in, and/or coordinated 17 sham round-trip loan transactions"). At minimum, Plaintiffs' civil RICO claim is subject to dismissal because it includes allegations about conduct as to which the guilty verdict against Mr. Collins affords no justification for lifting the bar to RICO claims based on conduct actionable under the securities laws.

## IV. PLAINTIFFS HAVE FAILED TO STATE A RICO CLAIM.

1. Plaintiffs continue to gloss over the requisite standard for alleging an agreement to join a RICO conspiracy, *see* Opp. 32–33, and fail to plead "facts that support a conclusion that defendants *consciously agreed* to commit predicate acts." *Cont'l Fin. Co. v. Ledwith*, No. 08 CIV. 7272, 2009 WL 1748875, at *6 n.4 (S.D.N.Y. June 22, 2009) (emphasis added) (quotation omitted); *see Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990); *Fuji Photo Film USA, Inc. v. McNulty*, 640 F. Supp. 2d 300, 312 (S.D.N.Y. 2009).

Allegations that are merely consistent with conspiracy are not sufficient to plead an actual agreement. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553–55 (2007). Plaintiffs rely upon six well-worn allegations to support their claim of agreement, but none of these is sufficient to make a proper allegation of an agreement. *See* Opp. 33–34. In addition to being impermissibly vague, *see Hecht*, 897 F.2d at 25 ("[A] RICO civil conspiracy complaint, at the very least, must allege *specifically* such an agreement." (emphasis added)), these allegations, by themselves, do not evidence an agreement on Mayer Brown's part to perpetuate the Refco fraud. *See* Mem. 32–34.

2. Plaintiffs also fail to plead a pattern of racketeering activity because they do not plead any predicate acts outside the limited period of the LBO with sufficient specificity.

Plaintiffs imply that the requirements of Rule 9(b) do not apply to RICO claims based on fraud unless the mailings or wirings themselves are alleged to be fraudulent, Opp. 37 & n.14, but the law is to the contrary; the predicate offenses of fraud themselves must be pleaded with particularity, *see, e.g., Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008).  Here, Mayer Brown's argument is not merely that details of particular mailings or wirings are not specified; it is that Plaintiffs have not even identified anyone who was the victim of the alleged fraud outside the period of the LBO, much less how any such person was defrauded.[17]  Non-particularized allegations of "multiple victims" are insufficient to satisfy Rule 9(b).  *See, e.g., GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 891 F. Supp. 64, 67 (D. Conn. 1994) (rejecting RICO claim where plaintiff identified only itself and unspecified "creditors" and "investors" as victims), *aff'd*, 67 F.3d 463, 468 (2d Cir. 1995).

## CONCLUSION

For the reasons stated above and in the opening memorandum, the RICO count of the Second Amended Complaint should be dismissed with prejudice.

---

[17] Plaintiffs point to their allegation that Secured Lenders were defrauded, SAC ¶ 84 n.26, but that alleged fraud also occurred at the time of the LBO and thus does not assist Plaintiffs in establishing continuity.  Otherwise Plaintiffs do no more than allege that unidentified "financial institutions" and "investors" were defrauded.

Dated: February 9, 2010
      Washington, D.C.

WILLIAMS & CONNOLLY LLP


_____/s/_____
By:

John K. Villa (jvilla@wc.com)
   (admitted *pro hac vice*)
George A. Borden (gborden@wc.com)
Thomas G. Ward (tward@wc.com)
WILLIAMS & CONNOLLY LLP
725 Twelfth St., NW
Washington, D.C.  20005
Ph: 202-434-5000
Fax: 202-434-5029

*Attorneys for Mayer Brown LLP*

CLIFFORD CHANCE US LLP

By: _Anthony M. Candido /RKP_

Anthony M. Candido (Anthony.Candido@cliffordchance.com)
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019
Ph: 212-878-8000
Fax: 212-878-8375

*Attorneys for UK Limited Liability Partnership*
*Mayer Brown International LLP*