UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x

THOMAS H. LEE EQUITY FUND V, L.P.,      :     07 MDL 1902 (JSR)
THOMAS H. LEE PARALLEL FUND V, L.P.,    :
and THOMAS H. LEE EQUITY (CAYMAN)     :     07 Civ. 6767 (JSR)
FUND V, L.P.,     :
    :
               Plaintiffs,     :
    :
       v.     :
    :
MAYER, BROWN, ROWE & MAW LLP and     :
JOSEPH P. COLLINS,     :
    :
              Defendants.     :

——————————————————————— x

**THE THL FUNDS' OBJECTION TO THE REPORT AND RECOMMENDATION OF
SPECIAL MASTER CAPRA ON MAYER BROWN LLP AND MAYER BROWN
INTERNATIONAL LLP'S MOTION TO DISMISS PLAINTIFFS' AMENDED RICO
CONSPIRACY CLAIM**

Mark C. Hansen
Silvija A. Strikis
Kevin B. Huff (KH-9284)
KELLOGG, HUBER, HANSEN, TODD,
   EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

Greg A. Danilow (GD-1621)
Paul Dutka (PD-2568)
Christopher R.J. Pace (CP-0001)
Seth Goodchild (SG-2296)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000

May 13, 2010                             *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

BACKGROUND ............................................................................................................................ 4

ARGUMENT .................................................................................................................................. 7

I.      PRINCIPLES OF PARTNERSHIP LAW DEMONSTRATE THAT
COLLINS AND MAYER BROWN SHOULD BE CONSIDERED THE
SAME "PERSON" FOR THE PURPOSES OF THE CRIMINAL
CONVICTION EXCEPTION ............................................................................................. 7

II.     THE PURPOSE OF THE CRIMINAL CONVICTION EXCEPTION
SUPPORTS TREATING COLLINS AND MAYER BROWN AS THE
SAME "PERSON" UNDER THE EXCEPTION ............................................................. 13

III.    THE LEGISLATIVE HISTORY AND THE CASE LAW APPLYING
THE CRIMINAL CONVICTION EXCEPTION DO NOT SUPPORT
DISMISSAL OF THE THL FUNDS' AMENDED RICO CLAIM ................................ 14

CONCLUSION ............................................................................................................................. 19

# TABLE OF AUTHORITIES

Page

**Cases:**

*131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507 (S.D.N.Y. 1995) ...........................18

*Amendolare v. Schenkers Int'l Forwarders, Inc.*, 747 F. Supp. 162 (E.D.N.Y. 1990)................18

*Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332 (1982) ....................................11

*Bernstein v. IDT Corp.*, 582 F. Supp. 1079 (D. Del. 1984) ........................................10

*Caplan v. Caplan*, 268 N.Y. 445, 198 N.E. 23 (1935), *superseded by statute on other grounds*, N.Y. Dom. Rel. Law § 57 (1937) (repealed), *as recognized in People v. Morton*, 308 N.Y. 96, 98, 123 N.E.2d 790, 790-91 (1954) ...........................9

*Comfort v. Wheaton Family Practice*, 594 N.E.2d 381 (Ill. App. Ct. 1992) ..................8

*Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995) ....................................................18

*Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133 (9th Cir. 2003).....................11

*Georgou, In re*, 145 B.R. 36 (Bankr. N.D. Ill. 1992).....................................................8

*Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103 (2d Cir. 1988) .......16

*Littlefield v. Tilley*, No. 2:06-0061, 2006 WL 2585048 (M.D. Tenn. Sept. 7, 2006) ...................16

*National Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ........................10

*National Elec. Benefit Fund v. Heary Bros. Lightning Prot. Co.*, 931 F. Supp. 169 (W.D.N.Y. 1995) ...........................................................................................................18

*NLRB v. Fruit & Vegetable Packers & Warehousemen, Local 760*, 377 U.S. 58 (1964)........................................................................................................................14

*Parmalat Sec. Litig., In re*, 383 F. Supp. 2d 616 (S.D.N.Y. 2005)...............................8

*Peck, In re*, 206 N.Y. 55, 62, 99 N.E. 258 (1912) .......................................................8

*People v. Morton*, 308 N.Y. 96, 123 N.E.2d 790 (1954)...............................................9

*Rechberger v. Hurlbert*, No. 07-CV-61A, 2010 WL 742197 (W.D.N.Y. Mar. 1, 2010) .............15

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ...................................................13

*Somer & Wand, P.C. v. Rotondi*, 642 N.Y.S.2d 937 (App. Div. 2d Dep't 1996)...........8

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw, LLP*, 612 F.
Dupp. 2d 267 (S.D.N.Y. 2009) ........................................................................8

*Tittle v. Enron Corp. (In re Enron Corp. Sec Derivative & ERISA Litig.)*,
284 F. Supp. 2d 511 (S.D. Tex. 2003) ..............................................17

*United States v. A & P Trucking Co.*, 358 U.S. 121 (1958) ....................................10, 13

*Webster v. Fall*, 266 U.S. 507 (1925) ....................................................................15

*Zuckerman v. Antenucci*, 478 N.Y.S.2d 578 (Sup. Ct. 1984) ..........................................8

## Statutes:

Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 904(a), 84 Stat. 922 ...................13

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67,
109 Stat. 737 ..........................................................................................1

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ...........................1

18 U.S.C. § 1964(c) ....................................................................................2, 7

Sherman Antitrust Act, 15 U.S.C. § 1 ....................................................................11

805 Ill. Comp. Stat. 206/305(a) ..........................................................................8

N.Y. Dom. Rel. Law § 57 ....................................................................................9

N.Y. P'ship Law § 24 ......................................................................................8

## Legislative Materials:

141 Cong. Rec. S9150 (amendment 1481) (daily ed. June 27, 1995) ........................................14

141 Cong. Rec. S17991 (daily ed. Dec. 5, 1995) ........................................................14

## Other Authorities:

7 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (2d ed. 2003) ....................................11

Alan R. Bromberg, *Crane and Bromberg on Partnership* § 68 (1968) ........................................17

1 Alan R. Bromberg & Larry E. Ribstein, *Bromberg and Ribstein on Partnership*
(Supp. 1999 & 2002) ....................................................................................9

Jed S. Rakoff & Howard W. Goldstein, *RICO Civil and Criminal Law and Strategy* (2000) ................................................................................................18

Restatement (Second) of Judgments § 60 (1982) ............................................................9

Uniform Partnership Act of 1997 § 305(a) .....................................................................9

Plaintiffs Thomas H. Lee Equity Fund V, L.P.; Thomas H. Lee Parallel Fund V, L.P.; and Thomas H. Lee Equity (Cayman) Fund V, L.P. (collectively, the "THL Funds") respectfully submit, pursuant to Case Management Order #3 filed in *In Re Refco Securities Litigation*, 07 MDL 1902 (Nov. 2, 2009), and Federal Rule of Civil Procedure 53, their objection to the Report and Recommendation of Special Master Daniel Capra dated May 3, 2010 (the "R&R") on Defendant Mayer, Brown, Rowe & Maw LLP's ("Mayer Brown") motion to dismiss plaintiffs' amended claim for conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO").[1]

## PRELIMINARY STATEMENT

This case involves the spectacular fraud perpetrated at Refco and the central role that Mayer Brown and one of its partners, Joseph Collins, played in that fraud. Mayer Brown, acting through Collins, participated directly and knowingly in the fraud by documenting sham round-trip loan transactions designed to hide Refco's steadily growing losses and by concealing those losses, the sham loans, and other important information from the THL Funds during its purchase of Refco in 2004. When the fraud was finally revealed, Refco collapsed, and the THL Funds lost hundreds of millions of dollars.

The THL Funds sued Mayer Brown, alleging (among other things) common-law fraud and conspiracy to violate RICO. In March 2009, Judge Lynch denied Mayer Brown's motion to dismiss the fraud claim (a ruling that is not challenged) but dismissed the RICO claim on the ground that Section 107 of the Private Securities Litigation Reform Act of 1995 ("PSLRA") bars a RICO claim based on conduct that would have been actionable as securities fraud (the "PSLRA

---

[1] The THL Funds incorporate by reference their briefs and accompanying declaration in connection with the motion to dismiss and the THL Funds' oral arguments made to the Special Master.

bar").  In July 2009, Collins was criminally convicted for his role in the Refco fraud against the

THL Funds, he was sentenced to seven years in prison, and judgment was entered against him on

March 17, 2010.

Based on Collins's criminal conviction, the THL Funds filed a Second Amended

Complaint ("2AC") asserting RICO claims against both Collins and Mayer Brown.  The THL

Funds did so in reliance on the exception to the PSLRA bar for "an action against any person that

is criminally convicted in connection with the fraud," 18 U.S.C. § 1964(c) ("Criminal Conviction

Exception" or "Exception").  Mayer Brown moved to dismiss the RICO claim on the ground

(among others) that the Criminal Conviction Exception did not apply to Mayer Brown because it

had not been criminally convicted.  The Special Master agreed with Mayer Brown on this point,

concluding in Section V of the R&R[2] that the Exception applies only to a "person" who has been

criminally convicted, and Mayer Brown itself has not been criminally convicted.

The THL Funds respectfully object to the Special Master's reading of the Criminal

Conviction Exception.  Mayer Brown and Collins should be treated as the same "person" for

purposes of the Exception.  Under longstanding principles of partnership law, a partnership can

act only through its partners and is liable for the acts of its partners.  Therefore, for purposes of

liability, the law treats the partner and partnership as the same person.  Because Collins's acts are

the acts of Mayer Brown for purposes of liability, the Court should interpret the term "person" in

the Criminal Conviction Exception to include both Collins and Mayer Brown.  *See infra* Part I.

---

[2] The THL Funds do not object to Sections VI, VII, and VIII of the R&R, which correctly reject
Mayer Brown's three additional arguments for dismissing the THL Funds' amended RICO
claim.  Defendant Joseph Collins also moved to dismiss the THL Funds' amended RICO claim,
joining in these three rejected arguments only.  The Special Master issued a separate R&R
recommending that Collins's motion to dismiss be denied, principally for the reasons set forth in
the Mayer Brown R&R.  *See* Report and Recommendation of the Special Master on Joseph
Collins's Motion To Dismiss Plaintiffs' Amended RICO Conspiracy Claim (May 6, 2010).

The Special Master acknowledged that, under partnership law, a partnership such as Mayer Brown is liable for wrongs committed by partners. But the Special Master concluded that, because Mayer Brown itself could have been convicted, the Criminal Conviction Exception did not apply to Mayer Brown. The Special Master erred, however, by overlooking the fact that Congress is presumed to legislate against the background of bedrock principles of law, including that a partner and partnership are treated as one for purposes of liability. For that reason, the text of the Exception must be read in accord with this principle of partnership law. *See infra* Part I.

In addition, the policy underlying the Criminal Conviction Exception supports a finding that the Exception applies to Mayer Brown in this case. The PSLRA bar was intended to weed out meritless "strike" suits. The Criminal Conviction Exception was designed to permit suits that were sufficiently serious to merit a criminal sanction. The Special Master erred by presuming that this consideration is "defendant-specific." Under partnership law, there is no difference between the partner and the partnership for purposes of liability because the partnership can act only through its partners. Where a criminal trial has concluded that a partner's conduct (which by law is the partnership's conduct) is sufficiently serious to warrant a criminal sanction, the purpose of the Exception is fulfilled. *See infra* Part II.

The legislative history on which the Special Master relied does not require a different result. That history involved the rejection of a proposal that would have applied the Exception to all participants in a fraudulent scheme. The THL Funds ask for no such broad rule; instead, as the R&R recognized, the THL Funds assert the narrow point that a partnership and its partner should be treated the same for purposes of liability. In any event, the statement of a single opponent of legislation (such as that cited here) should be accorded little weight. Finally, as the R&R recognized, the cases that Mayer Brown cites in its moving papers are distinguishable

because *none* of them addresses (much less rejects) the argument here: that the Exception applies to a partnership whose partner has been criminally convicted. *See infra* Part III.

The THL Funds respectfully submit that the Special Master's conclusion that the Criminal Conviction Exception does not apply to Mayer Brown is incorrect, and that the Court should reject the recommendation to dismiss the THL Funds' amended RICO claim against Mayer Brown.

## BACKGROUND

Mayer Brown and Collins – a senior partner at Mayer Brown – agreed to enter into a multi-faceted, multi-year criminal conspiracy with Refco executives Phillip Bennett, Rob Trosten, and Santo Maggio (the "Refco Operators"), *see* 2AC ¶ 101, which led to the collapse of Refco and to substantial damages to the THL Funds, *see id.* ¶ 5.

Beginning as early as 1997 and continuing through 2005, the Refco Operators were involved in effectuating sham transactions for the purposes of concealing substantial debt of Refco – the "RGHI Receivable" – from, among others, regulators and financial institutions. *See id.* ¶ 95(a); *see also id.* ¶ 20. These transactions enabled Refco to issue false financial statements, which the Refco Operators and co-conspirators used to induce third parties such as the THL Funds to invest in Refco by hiding the RGHI Receivable and Refco's true financial condition. *See id.* ¶ 95(a).

Collins and Mayer Brown (Refco's longstanding outside counsel) played a key role in carrying out this fraud beginning as early as 1997, when Collins and Mayer Brown began helping Refco conceal uncollectible debts. *See id.* ¶ 23. Starting in 2000, Collins and Mayer Brown participated in the fraud by "negotiat[ing], participat[ing] in, and/or coordinat[ing]" the sham loans *17 different times* over the course of six years, "knowing that they did not have a

legitimate business purpose," and that they "were used to move the RGHI Receivable off of Refco's financial statements at the end of financial reporting periods." *Id.* ¶¶ 34-35, 100(a).

The Refco Operators transmitted materially false financial statements that did not accurately reflect the RGHI Receivable and Refco's true financial condition to third parties, including potential investors such as the THL Funds, as well as financial institutions that loaned money to Refco. *See id.* ¶ 95(b). The participation of Collins and Mayer Brown was critical to the fraudulent scheme. Mayer Brown and Collins, among other things, made false representations, assisted others in making false representations, and hid material information from the THL Funds about Refco's financial condition. *See id.* ¶ 100(b); *see also id.* ¶¶ 44-59.

In particular, Mayer Brown and Collins concealed from the THL Funds the sham round-trip loan transactions that they had repeatedly worked on from 2000 to 2005, which in turn were designed to conceal the RGHI Receivable. *See id.* ¶¶ 47-54, 58-59, 100(a). In addition, Mayer Brown and Collins conspired with Bennett and others to hide from the THL Funds the terms of the Proceeds Participation Agreement ("PPA"). *See id.* ¶¶ 60, 100(e). Indeed, Mayer Brown and Collins "went so far as to manufacture a counterfeit Fourth LLC Agreement, transmitted that counterfeit to the THL Funds over interstate wires, and falsely represented to the THL Funds that the counterfeit was the genuine Fourth LLC Agreement" in order to hide the terms of the PPA from the THL Funds. *Id.* ¶ 100(e). "Mayer Brown and Collins undertook those actions and misrepresentations to mislead the THL Funds as to Refco's financial condition, its ownership structure, and its related-party transactions." *Id.*; *see also id.* ¶¶ 60-71. The fraudulent conduct of Mayer Brown and Collins was part of a common scheme with Bennett and his other co-conspirators to induce (1) the THL Funds to purchase Refco in 2004 (and at a grossly inflated price), (2) financial institutions to lend money to Refco, and (3) other third parties to invest in

Refco, as well as to mislead governmental and exchange regulators as to Refco's financial health and compliance with regulatory and capital requirements. *Id.* ¶ 101.

This conduct reflects a pattern of racketeering behavior. The complex and multi-faceted criminal conspiracy – beginning in 1997 and continuing through 2005 – precipitating Refco's collapse "involved multiple acts of racketeering activity," including "wire, mail, securities, and financial institution fraud." *Id.* ¶ 96(a)-(b). The conspiracy involved "a number of participants," including the Refco Operators, other Refco employees, Mayer Brown, Collins, the Bank für Arbeit und Wirtschaft und Österreichische Postsparkasse Aktiengesellschaft, and the third parties who engaged in the sham round-trip transactions. *Id.* ¶ 96(e). The conspiracy and subsequent collapse of Refco inflicted devastating harm on "a substantial number of victims," including the THL Funds. *Id.* ¶ 96(f). The THL Funds suffered hundreds of millions of dollars of damages as a direct result of the conduct of the criminal enterprise. *See id.* ¶ 90.

On July 10, 2009, following a nine-week jury trial, Collins was criminally convicted in the United States District Court for the Southern District of New York for his participation in the Refco fraud. Collins was convicted of: (1) one count of conspiracy to commit securities fraud, wire fraud, bank fraud, and money laundering, to make false filings with the SEC, and to make material misstatements to auditors (Count One of the Collins Superseding Indictment); (2) two counts of securities fraud (Counts Two and Three); and (3) two counts of wire fraud (Counts Six and Nine). *See* Jury Verdict, *United States v. Collins*, S1 07 Cr. 1170 (RPP) (S.D.N.Y. July 10, 2009); Verdict Form at 1-5, *United States v. Collins*, S1 07 Cr. 1170 (RPP) (S.D.N.Y. filed July 10, 2009) (Decl. of Thomas G. Ward in Supp. of Mayer Brown's Mot. To Dismiss (filed Dec. 22, 2009) ("Ward Decl."), Ex. E).

**ARGUMENT**

This Court reviews the Special Master's R&R *de novo*. *See* Case Management Order #3, at 2, *In re Refco Sec. Litig.*, 07 MDL 1902 (Nov. 2, 2009). The Special Master concluded that the PSLRA barred THL's RICO claim against Mayer Brown because Mayer Brown had not been criminally convicted. But under longstanding principles of partnership law, Mayer Brown and Collins should be treated as the same "person" for purposes of the Criminal Conviction Exception. The THL Funds respectfully submit that the conviction of Joseph Collins triggers the Criminal Conviction Exception with respect to Mayer Brown, and that this Court should reject the Special Master's recommendation to the contrary.

**I.  PRINCIPLES OF PARTNERSHIP LAW DEMONSTRATE THAT COLLINS AND MAYER BROWN SHOULD BE CONSIDERED THE SAME "PERSON" FOR THE PURPOSES OF THE CRIMINAL CONVICTION EXCEPTION**

The RICO statute provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. *The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud*, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

18 U.S.C. § 1964(c) (emphasis added). In July 2009, Collins was criminally convicted for his role in the Refco fraud and judgment was entered against him on March 17, 2010. The Special Master correctly held that "Collins was unquestionably convicted 'in connection with' fraud in the purchase or sale of securities. That lifts the PSLRA bar (at least as to him)." R&R at 11. The Special Master, erred, however, in finding that the bar was not also lifted as to Mayer Brown.

Under well-settled principles of partnership law, a partnership such as Mayer Brown can act only through its partners (or other agents), such as Collins. For this reason, the partnership is liable for the acts of its partners. For purposes of liability, therefore, the law treats partner and partnership as a single entity. For example, Section 24 of the New York Partnership Law provides that, "[w]here, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership . . . , *the partnership is liable therefor to the same extent as the partner so acting* or omitting to act." N.Y. P'ship Law § 24 (emphasis added).[3] The law of Illinois is to the same effect. *See, e.g.*, 805 Ill. Comp. Stat. 206/305(a) ("A partnership is liable for loss or injury caused to a person, or for a penalty incurred, as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership.").

Based on these foundational principles, courts have consistently recognized that the wrongful acts of a partner *are* the acts of a partnership for purposes of liability. *See, e.g.*, *Somer & Wand, P.C. v. Rotondi*, 642 N.Y.S.2d 937, 939 (App. Div. 2d Dep't 1996); *Zuckerman v. Antenucci*, 478 N.Y.S.2d 578, 579-80 (Sup. Ct. 1984); *see also In re Peck*, 206 N.Y. 55, 62, 99 N.E. 258, 262 (1912). "Under New York law, a tort committed by a partner . . . in the course of the partnership's business is imputed to the partnership." *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 623 n.33 (S.D.N.Y. 2005); *Comfort v. Wheaton Family Practice*, 594 N.E.2d 381, 385 (Ill. App. Ct. 1992) ("A partnership is liable to the same extent as a partner for any wrongful act of the partner acting in the ordinary course of the business."); *In re Georgou*,

---

[3] Judge Lynch has decided that New York law governs the conduct of Mayer Brown in this case. *See Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw, LLP*, 612 F. Supp. 2d 267, 284 (S.D.N.Y. 2009) (Ward Decl., Ex. B).

145 B.R. 36, 37 (Bankr. N.D. Ill. 1992) (holding that partnership was liable for tort committed by partner acting in the course of business).  Moreover, courts long have held that "the acts performed in the name of a partnership cannot ordinarily be considered apart from the persons composing it"; indeed, "[i]n the field of liability . . . it is especially apparent that a partnership *cannot be regarded as an entity independent of the persons who compose it*." *Caplan v. Caplan*, 268 N.Y. 445, 447-48, 198 N.E. 23, 24-25 (1935) (internal quotations marks omitted; emphasis added), *superseded by statute on other grounds*, N.Y. Dom. Rel. Law § 57 (1937) (repealed), *as recognized in People v. Morton*, 308 N.Y. 96, 98, 123 N.E.2d 790, 790-91 (1954).

The Uniform Partnership Act likewise recognizes the shared personhood of partners and partnerships for liability purposes.  The Act provides that "[a] partnership is liable for loss or injury caused to a person . . . as a result" of wrongful conduct "of a partner acting in the ordinary course of business of the partnership."  Uniform Partnership Act of 1997 § 305(a); *see also* 1 Alan R. Bromberg & Larry E. Ribstein, *Bromberg and Ribstein on Partnership* § 4.07(a), at 4:106-07 (Supp. 2002-1) ("Just as a partner may bind the partnership to transactions in the scope of business, so the partnership may be subjected to tort liability to third parties and criminal and quasi-criminal penalties by the acts of a partner.") (citation and footnote omitted); *id.* § 4.07(e), at 4:122 (Supp. 1999-2) ("as far as the U.P.A. is concerned, as long as the act is 'in the ordinary course of business' of the partnership and a penalty could be imposed on the acting partner, the same penalty could be imposed on the partnership"); Restatement (Second) of Judgments § 60, at 106 (1982) (permitting plaintiff to enforce a judgment against a partner by executing on the property of the partnership without the need for a further judgment).

The same principle applies to criminal liability as applies to civil liability.  In the criminal law, a partnership is liable for the criminal acts of its partners and other agents.  For example, in

*United States v. A & P Trucking Co.*, 358 U.S. 121 (1958) (cited by Mayer Brown), the Court held that a partnership was liable for the criminal actions of its agents: "The treasury of the business may not with impunity obtain the fruits of violations which are committed knowingly by agents of the entity in the scope of their employment." *Id.* at 126.

The Special Master specifically recognized and relied on these foundational principles of partnership law when he stated that "[t]here is something to be said for lifting the RICO bar as to a partnership when a partner is convicted." R&R at 7. The Special Master erroneously found, however, that "[w]hile Congress could have – and perhaps should have – carved out partnerships for special treatment under the conviction exception, it did not." *Id.* at 8.

The Special Master's conclusion overlooks the important principle that Congress is presumed to have understood these foundational principles of partnership law when it enacted the Criminal Conviction Exception. *See National Archives & Records Admin. v. Favish*, 541 U.S. 157, 169 (2004) (courts must "assume Congress legislated against [a] background of law, scholarship, and history when it enact[s]" a statute); *see also Bernstein v. IDT Corp.*, 582 F. Supp. 1079, 1083 (D. Del. 1984) ("When conduct is proscribed by a federal statute and civil liability for that conduct is explicitly or implicitly imposed, the normal rules of agency law apply in the absence of some indication that Congress had a contrary intent."). It is therefore fully consistent with the text of the Exception to conclude that, when Congress drafted the Exception, Congress understood that a partner and a partnership would be treated as the same "person" for the purposes of the Exception.

Because of the presumption that Congress legislates against the background of the common law, Congress did not need to "carve[ ] out" partnerships for special treatment as the Special Master suggests. Rather, by legislating against the background of longstanding

principles of partnership law, Congress incorporated those principles into the statute. The text of the Criminal Conviction Exception, interpreted with these background principles in mind, demonstrates that Collins and Mayer Brown should be considered the same person for the purposes of the Criminal Conviction Exception.

This conclusion as to the meaning of the word "person" in the Criminal Conviction Exception is supported by analogy to antitrust law demonstrating that, as a textual matter, a partner and partnership can be treated as the same entity. Section 1 of the Sherman Act, which governs concerted conduct, proscribes "[e]very contract . . . or conspiracy[] in restraint of trade." 15 U.S.C. § 1. The threshold question in a Section 1 case is whether the suit is brought against separate persons or a single entity. *See*, *e.g.*, 7 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1462a, at 191 (2d ed. 2003) ("§ 1 of the Sherman Act . . . require[s] a 'contract' or 'agreement' between two or more persons"). Applying these standards, courts have concluded that partners and their partnership are a "single entity" and therefore cannot engage in concerted conduct under Section 1. *See Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147-48 (9th Cir. 2003) ("single-entity rule" applies to "partnerships"; "[w]here there is substantial common ownership, a fiduciary obligation to act for another entity's economic benefit or an agreement to divide profits and losses, individual firms function as an economic unit and are generally treated as a single entity"); *Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332, 356 (1982) ("The foundations are not analogous to partnerships . . . in which persons who would otherwise be competitors pool their capital and share the risks of loss as well as the opportunities for profit. In such joint ventures, the partnership is regarded as a single firm[.]"); *see also* 7 Areeda & Hovenkamp, *Antitrust Law* ¶ 1476d, at 309 ("lawfully formed partnership" of lawyers should be treated as single "entity" outside the scope of Section 1).

The analogy to Section 1 of the Sherman Act demonstrates that Courts have no trouble concluding that a partner and partnership should be considered the same "person" as a matter of statutory construction. The Special Master acknowledged this line of cases in reasoning that "[t]here is something to be said for lifting the RICO bar as to a partnership when a partner is convicted," R&R at 7, but the Special Master failed to appreciate the import of this authority when he found entirely dispositive the simple fact that Mayer Brown could have been convicted in this case but was not. *See id.* at 8.[4] The fact that Mayer Brown itself could have been convicted does not foreclose the interpretation that, for the purposes of the Criminal Conviction Exception, Collins and Mayer Brown are considered the same person. That is because a partnership can act only through its partners and, for purposes of attributing both civil and criminal liability, the partner's acts are treated by the law as those of the partnership.

Finally, the fact that the statute defines "person" to include entities such as corporations or partnerships, on which the Special Master relied, *see* R&R at 6, does not foreclose applying the Exception to Mayer Brown in this case. Rather, the definition merely defines the range of entities that may be considered persons; it does not address the key issue of when the identities of a partner and partnership merge for the purposes of liability such that they are considered the same "person."

---

[4] Similarly misplaced is Mayer Brown's argument in its reply memorandum (at 2 n.2) that courts have refused to apply the intracorporate conspiracy doctrine in criminal cases or in other contexts. The THL Funds point to the Sherman Act cases as an analogy to demonstrate that a statute making reference to a "conspiracy" can be (and has been) construed to treat a partner and partnership as one "person" for purposes of the statute. In other words, as a textual matter, the term "person" can encompass both the partner and the partnership even though the two can be separate entities in other contexts. Mayer Brown's argument does not undermine the THL Funds' argument by analogy that a partner can be treated as the same "person" as a partnership. And, for the reasons stated *infra*, the purposes of the Exception support a finding that the word "person" in the Exception includes both the partner and partnership when the partner has been convicted for acts committed in the course of partnership business.

## II. THE PURPOSE OF THE CRIMINAL CONVICTION EXCEPTION SUPPORTS TREATING COLLINS AND MAYER BROWN AS THE SAME "PERSON" UNDER THE EXCEPTION

The Supreme Court has held that RICO should be interpreted "broadly," as a consequence "not only of Congress' self-consciously expansive language . . . but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes.'" *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985) (quoting Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 904(a), 84 Stat. 922, 947). As the Special Master recognized, "[t]he PSLRA was designed to prevent strike suits in securities cases." R&R at 6. As for the Criminal Conviction Exception, "[t]he idea . . . was that if a defendant had been convicted, there is obviously some merit to the underlying claim – it is not a strike suit." *Id.* The Special Master acknowledged that "the concern over strike suits against others alleged to be involved with a convicted person[ ] is diminished when the convicted person is a partner [and] a RICO claim is pursued against the partnership." *Id.* at 7. This observation is entirely correct and demonstrates why the policy behind the Criminal Conviction Exception fully supports an interpretation that would lift the PSLRA bar as to Mayer Brown based on Collins's conviction. Collins was convicted of the very fraud that is the basis of the THL Funds' Complaint, and there is no doubt therefore that the RICO claim being brought against Mayer Brown in connection with Collins's fraud is sufficiently serious to trigger application of the Exception.

The Special Master erred, however, when he found application of the Exception to be "defendant-specific." *Id.* Because partnership law makes Mayer Brown automatically liable for the acts of Collins undertaken on behalf of the partnership, there is no difference between Collins's acts and Mayer Brown's acts. With respect to both civil liability and criminal liability, a partnership can only act through its partners or other agents. *See*, *e.g.*, *A & P Trucking*, 358 U.S. at 126 (partnership liable for the criminal actions of its agents). Therefore, the purpose of

the Exception – to ensure that this case is substantial and not a strike suit – is fully met by the fact that Collins has been convicted.  It is thus mere formalism to say that Collins and Mayer Brown are separate entities, where for the purposes of liability they are one and the same.

### III. THE LEGISLATIVE HISTORY AND THE CASE LAW APPLYING THE CRIMINAL CONVICTION EXCEPTION DO NOT SUPPORT DISMISSAL OF THE THL FUNDS' AMENDED RICO CLAIM

The Special Master incorrectly relied on the sparse legislative history of the Criminal Conviction Exception to support the reasoning of the R&R.  *See* R&R at 6.  Specifically, the Special Master stated that "Senator Biden had initially proposed broader language that would have allowed suit 'if any participant in the fraud is criminally convicted in connection therewith.'"  *Id.* at 6-7 (quoting 141 Cong. Rec. S9150, 9163 (amendment 1481) (daily ed. June 27, 1995)).  The Special Master noted that "Senator Biden stated that his proposal would mean that 'the RICO statute [could] be used in a securities fraud civil case if at least one person in the civil case has been criminally convicted,'" whereas under the enacted Exception "'RICO could only be used in the civil case against the person who was actually criminally convicted.'"  *Id.* at 7 (quoting 141 Cong. Rec. S17991, 17992 (daily ed. Dec. 5, 1995) (statement of Sen. Biden)).

The reliance on this brief snippet of legislative history from a single senator is in error for two principal reasons.  First, the Supreme Court has repeatedly warned about using legislative history from an opponent of the bill, as Senator Biden was.  *See NLRB v. Fruit & Vegetable Packers & Warehousemen, Local 760*, 377 U.S. 58, 66 (1964) ("But we have often cautioned against the danger, when interpreting a statute, of reliance upon the views of its legislative opponents.  In their zeal to defeat a bill, they understandably tend to overstate its reach.").  The Special Master recognized this general principle, *see* R&R at 7 n.6, but concluded that "[t]he important point is that Senator Biden proposed language that would have lifted the bar to a RICO suit against Mayer Brown in this case, and the language ultimately adopted by Congress was

narrower, and does not lift the bar in a case such as this." *Id.* This conclusion overlooks a critical point, however, which is the second reason it was error to rely on this legislative history: the language Senator Biden proposed would have lifted the bar to a RICO suit against Mayer Brown on a much broader liability theory than that being advocated by the THL Funds. The THL Funds are not arguing for an interpretation of the Exception that would allow a RICO suit as long as any participant in the fraud is criminally convicted, as Senator Biden's proposed language would have allowed. Rather, the THL Funds' contention is much narrower: under partnership law, the partner and the partnership are the same person for purposes of liability such that they are considered the same "person" under the Exception.

The Special Master also noted that "Mayer Brown cites a number of cases in which courts refused to apply the conviction exception against defendants who had not themselves been convicted." R&R at 5. However, these cases are simply inapposite, as they address (most with little analysis) whether the conviction of one defendant involved in a larger fraud triggers the Exception with respect to other actors involved in the fraud. *None* of these cases addresses, let alone rejects, the application of partnership liability in connection with the Exception. *None* of these cases addresses whether the wrongful acts of a partner done in the course of a partnership's business are the acts of the partnership itself for purposes of the Exception. Only one case cited by Mayer Brown (in a supplemental e-mail to the Special Master prior to oral argument), *Rechberger v. Hurlbert*, No. 07-CV-61A, 2010 WL 742197 (W.D.N.Y. Mar. 1, 2010), even dealt with a partner and partnership, and in that case, the argument raised by the THL Funds here was not considered, as the Special Master correctly noted. *See* R&R at 7-8 n.7. Such cases therefore provide no support for rejecting the THL Funds' argument here. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of

the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988) (where an "issue . . . was [not] briefed, argued, or decided" in a prior opinion, a "*sub silentio*" resolution of that issue is "not binding precedent") (internal quotation marks omitted).

In addition, the case law in situations where the plaintiff could have raised a vicarious liability argument with respect to the Exception is not all one-sided. In *Littlefield v. Tilley*, No. 2:06-0061, 2006 WL 2585048, at *1-*2 (M.D. Tenn. Sept. 7, 2006), the court denied a motion to dismiss all the defendants, including the co-director and the corporation itself, based on the PSLRA bar, in light of the criminal conviction of one director.

Some of the cases cited by Mayer Brown involve situations where the plaintiff *could* have argued, but did not, that principles of vicarious liability should apply to lift the PSLRA bar. But even if the courts had considered an argument based on vicarious liability in the context of a corporation or a conspiracy, the case for vicarious liability is much stronger in the partnership context. The Special Master correctly appreciated this distinguishing feature of the THL Funds' position. *See* R&R at 7 ("[T]he THL Funds do not challenge the case law imposing the RICO bar in favor of unconvicted parties when only one individual is convicted.").

The case for vicarious liability in applying the Exception is stronger in the partnership context than in the corporate context. In the case of a partnership, the partnership is always liable for the wrongful acts of its partners performed in the ordinary course of the partnership's business. Under corporate vicarious liability, however, there are often questions about whether the corporation should be held liable for the acts of low-level employees. Another unique feature that distinguishes partnerships from other species of vicarious liability is the partnership's symmetry: "[E]ach partner is, roughly speaking, both a principal and an agent, both a trustee and

a beneficiary, for he has the property, authority and confidence of his co-partners, as they do of him.  He shares their profits and losses, and is bound by their actions."  Alan R. Bromberg, *Crane and Bromberg on Partnership* § 68, at 389 (1968).  The relationship between a corporation and its employees lacks this symmetrical dynamic, and it is this dynamic which illustrates the appropriateness of finding a partner and partnership to be the same person for purposes of the Exception.  Finally, in a corporation, ownership and management are separated; in a partnership, they are joined, making it easier for the owners to supervise the conduct of the business, and therefore easier to conclude that the partnership should be held liable for the acts of its partner.

The case for applying the Exception in the partnership context is also significantly stronger than in the context of a conspiracy or scheme to defraud.  In one of the cases Mayer Brown cites in its papers, *see* Reply Mem. in Supp. of Mayer Brown's Mot. to Dismiss at 4 (filed Feb. 9, 2010) ("Reply Br.") (citing *Tittle v. Enron Corp. (In re Enron Corp. Sec Derivative & ERISA Litig*.), 284 F. Supp. 2d 511 (S.D. Tex. 2003)), the plaintiff argued that because the defendants were all part of the same "scheme to defraud" the Exception should apply to all of them.  This case provides no support for Mayer Brown's position.  First, as with all of the cases cited by Mayer Brown on this point, the plaintiffs did not raise, and the Court did not address, an argument that under principles of vicarious liability the Criminal Conviction Exception should be applied.  Second, there are important distinctions between applying vicarious liability in the context of a conspiracy and in the partnership context.  In a conspiracy, the agreement to commit the unlawful acts is itself the crime and also creates the vicarious liability.  As such, permitting an allegation of conspiracy to implicate the Exception would be purely circular bootstrapping – the Exception would apply to all RICO securities fraud claims because they are all schemes.  By

contrast, in the partnership context, the partnership relation that creates vicarious liability is preexisting and independent of the criminal conduct; it is created by statute and recognized in the common law. In addition, a partnership is a legal entity that can sue or be sued, but it can only act through its partners or other agents. By contrast, a conspiracy exists only with respect to a particular agreement to accomplish a particular end.

For these reasons, the case law cited by Mayer Brown and considered by the Special Master (R&R at 5-6) does not support Mayer Brown's position, and there is no basis in the case law for concluding that Collins's conviction for conduct indisputably performed during the ordinary course of the partnership's business should not trigger the Exception to the PSLRA bar as to the partnership Mayer Brown.[5]

---

[5] Mayer Brown argued, for the first time in its Reply memorandum, that there should be no vicarious liability under RICO. The Special Master did not base his recommendation on this argument, possibly because it was not properly raised by Mayer Brown in its initial memorandum. If Mayer Brown raises this argument again, the THL Funds respectfully request the opportunity to brief it, as it has never had that opportunity. In any event, Mayer Brown is wrong. *See* Jed S. Rakoff & Howard W. Goldstein, *RICO Civil and Criminal Law and Strategy* § 1.03[2], at 1-15 (2000) ("At least two courts have addressed the issue of vicarious liability in the context of a partnership. Both courts concluded that partnerships could be held vicariously liable for the actions of their partners.") (citing *131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1534 (S.D.N.Y. 1995), and *Crowe v. Henry*, 43 F.3d 198, 204, 206 (5th Cir. 1995)). The Second Amended Complaint meets even the "central figure" test for vicarious liability espoused by Mayer Brown. That test provides that a corporation is a "central figure" for purposes of vicarious liability if one of its officers or directors either "had knowledge of, or was recklessly indifferent toward, the unlawful activity." *Amendolare v. Schenkers Int'l Forwarders, Inc.*, 747 F. Supp. 162, 169 (E.D.N.Y. 1990) (internal quotation marks omitted). The 2AC alleges that Collins had knowledge of and was instrumental to the success of the overall fraudulent scheme. *See* 2AC ¶¶ 18, 73. That is more than sufficient. Finally, because Mayer Brown benefitted from the fraudulent scheme, *see id.* ¶ 15, imposition of vicarious liability is appropriate. *See, e.g.*, *National Elec. Benefit Fund v. Heary Bros. Lightning Prot. Co.*, 931 F. Supp. 169, 187 (W.D.N.Y. 1995) ("[A] corporate employer may be held vicariously liable under § 1962(c) for the acts of its employees when the employer is not the enterprise and the employer receives some benefit from its employee [sic] or agent's action.") (internal quotation marks omitted). Similarly, Mayer Brown argues in its Reply memorandum that even if the Exception could be invoked by imputing the conviction of a member of an organization to that organization, this is not an appropriate case for such imputation, because only a single partner has been convicted, and at the

**CONCLUSION**

For the foregoing reasons, the THL Funds respectfully request that the Court reject the Special Master's finding in the R&R that the Criminal Conviction Exception does not apply to Mayer Brown in this case and that the THL Funds' amended RICO claim against Mayer Brown should be dismissed with prejudice.

---

criminal trial it was argued that Collins lied to his partners.  Reply Br. at 5-6.  Mayer Brown cites no cases in support of its argument, which is contrary to the law discussed above that a partnership is liable for the wrongs committed by a partner.  In addition, Collins was not just any employee, but was a high-ranking senior partner at Mayer Brown.  Finally, the 2AC alleges that others at Mayer Brown, including Paul Koury, were involved in drafting the sham round-trip loan transactions (*see* ¶¶ 34-35) and false disclosure schedules (*see* ¶¶ 77-78), and discovery has shown even more involvement by others at Mayer Brown.

Dated:     May 13, 2010                    KELLOGG, HUBER, HANSEN, TODD,
                                           EVANS & FIGEL, P.L.L.C.


                                   By:     _____*/s/ Mark C. Hansen*_____
                                           Mark C. Hansen

                                   Mark C. Hansen
                                   Silvija A. Strikis
                                   Kevin B. Huff (KH-9284)
                                   1615 M Street, N.W., Suite 400
                                   Washington, D.C. 20036
                                   (202) 326-7900

                                   WEIL, GOTSHAL & MANGES LLP

                                   Greg A. Danilow (GD-1621)
                                   Paul Dutka (PD-2568)
                                   Christopher R.J. Pace (CP-0001)
                                   Seth Goodchild (SG-2296)
                                   767 Fifth Avenue
                                   New York, New York  10153
                                   (212) 310-8000

                                   *Attorneys for Plaintiffs*